STATE of Indiana on the Relation of Thomas STEINKE, And, Thomas Steinke, Appellants–Plaintiffs,

v.

George Terrance CORIDEN, William Rollen Howell, Linda Peterson Powell, John Albert Rader, Alec James Sarkisian, Susan Marie Severtson, and Andrew Scott Ward, Appellees–Defendants.

No. 49A04–0408–CV–435.

Court of Appeals of Indiana.

July 19, 2005.

Transfer Denied Oct. 20, 2005.

Thomas Steinke, Indianapolis, Appellant pro se.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

FRIEDLANDER, J.

Thomas Steinke appeals the trial court's determination that he lacks standing to seek an order of mandate. Steinke presents two issues, which we consolidate and restate as follows: Does an attorney who practices before the Worker's Compensation Board of Indiana (the Board) have standing to seek an order of mandate directing members of the Board to adhere to certain statutory guidelines?

We affirm.

The undisputed facts are that Steinke is an Indiana attorney whose practice includes representing employees before the Board. On March 4, 2004, Steinke filed a Verified Complaint for Writs of Mandate[1] (the Complaint), alleging that members of the Board (the Board Members) violated The Worker's Compensation Act, i.e., Ind. Code Ann. § 22–3–1–1 et seq. (West, PREMISE through 2005 Public Laws) (the Act) in the following respects:

8. ... [E]ach of the Defendants fails to devote his/her entire time to the discharge of the duties of his/her office as a Board Member.

9. ... [E]ach of the Defendants holds other position(s) of trust or profit, and/or engages in some occupation(s) or business(es) interfering with or inconsistent with the discharge of his/her duties as a Board Member.

10. As a result ..., the residents of the State of Indiana are deprived of their statutory right of access to a full-time ... Board composed of Members whose

sole focus and loyalty is toward the proper administration of the Workers' Compensation Act.

11. As a result ..., attorneys representing parties in workers' compensation matters ... lack access to a full-time [Board.]

12. As a result ..., the residents and institutions of the State of Indiana are harmed.

*Appellant's Appendix* at 6–8. Steinke has cited no *specific* incident or episode in which he was harmed by the alleged violations, but instead filed his action on behalf of the residents of Indiana.

On May 26, 2004, the Board Members moved for a dismissal of the Complaint, alleging Steinke lacked standing to seek an order of mandate. Thereafter, Steinke filed a Supplement to Plaintiffs' Response to Defendants' Motion to Dismiss, alleging: "[I]n addition to standing as a member of the public interested in the fulfillment of the state's laws, [Steinke] has general standing as an attorney affected by the Defendants' failure to fulfill their duties." *Id.* at 32–33. After a hearing, the trial court issued an Order of Dismissal, concluding Steinke lacked standing as a member of the public, as an attorney, and under the public standing doctrine. Steinke challenges that ruling on appeal.

The Board Members filed their motion to dismiss under both Trial Rule 12(B)(1) (lack of subject matter jurisdiction) and T.R. 12(B)(6) (failure to state a claim upon which relief can be granted).

---

1. We note that, pursuant to I.C. § 34–27–1–1 (West, PREMISE through 2005 Public Laws): Writs of mandate in the ... superior courts are abolished. Causes of action previously remedied by writs of mandate may be remedied by means of complaint and summons in the name of the state on relation of the party in interest in the ... superior ... court .... Such actions are to be known as actions for mandate.

Although Steinke erroneously filed his complaint under its antiquated name, we will not elevate form over substance in reviewing this appeal and will address the issues on the merits.

The trial court granted the motion under T.R. 12(B)(1), concluding that a court lacks jurisdiction to entertain a lawsuit in which the plaintiff lacks standing to press the action. We note, however, that motions to dismiss for lack of standing are properly brought under T.R. 12(B)(6). *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806 (Ind.2004). Therefore, we must determine whether dismissal is sustainable under that rule. When reviewing a ruling on a T.R. 12(B)(6) motion, we must take as true all allegations upon the face of the complaint. *Id.* We may dismiss only if the plaintiff would not be entitled to recover under any set of facts admissible under the allegations of the complaint. *Id.* Upon review, we view the pleadings in a light most favorable to the nonmoving party—in this case Steinke—and draw every reasonable inference in favor of that party. *Id.*

Our supreme court has explained standing as follows:

The judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power. It is designed to assure that litigation will be actively and vigorously contested. The standing requirement is a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury. This Court recently described the interest which a party must possess to confer standing: "[I]n order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue."

*Schloss v. City of Indianapolis*, 553 N.E.2d 1204, 1206 (Ind.1990) (quoting *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind. 1985)). When reviewing a trial court's decision to dismiss for lack of standing, we review the matter *de novo*. *Area Plan Comm'n of Evansville–Vanderburgh County v. Hatfield*, 820 N.E.2d 696 (Ind. Ct.App.2005). The question of whether Steinke has standing is purely one of law and does not require deference to the trial court's determination. *Id.* Reversal is appropriate if an error of law is demonstrated. *Id.*

Steinke contends he has general standing as an attorney representing clients before the Board.

Under our general rule of standing, only those persons who have a personal stake in the outcome of the litigation and who show that they have suffered or were in immediate danger of suffering a direct injury as a result of the complained-of conduct will be found to have standing. Absent this showing, complainants may not invoke the jurisdiction of the court. It is generally insufficient that a plaintiff merely has a general interest common to all members of the public.

*State ex rel. Cittadine v. Indiana Dep't of Transp.*, 790 N.E.2d 978, 979 (Ind.2003) (citations omitted). Here, Steinke claims he is injured because "attorneys such as himself 'lack access to a full-time ... Board composed of Members whose sole focus and loyalty is toward the proper administration of the Workers' Compensation Act [sic].' " *Appellant's Brief* at 22 (quoting the Complaint). Although Steinke presents a hypothetical scenario in which the Board's unavailability could or would delay payments due him, he alleges no incidents when this or any other harm actually occurred. In the absence of a showing that he has suffered or will immediately suffer a direct injury, there is no standing under the general rule.

We have determined that Steinke does not have standing under the general

rule, but he claims Indiana's public standing doctrine, an exception to the general rule, confers standing to file an action for mandate. *See Embry v. O'Bannon,* 798 N.E.2d 157 (Ind.2003).

> Indiana cases recognize certain situations in which public rather than private rights are at issue and hold that the usual standards for establishing standing need not be met. This Court held in those cases that when a case involves enforcement of a public rather than a private right the plaintiff need not have a special interest in the matter nor be a public official. Specifically, the public standing doctrine eliminates the requirement that the relator have an interest in the outcome of the litigation different from that of the general public.

*State ex rel. Cittadine,* 790 N.E.2d at 980 (citations omitted). Although the supreme court did not define "public right" in this context, it cited several examples where a public right was found to have existed. *See Miller v. City of Evansville,* 244 Ind. 1, 189 N.E.2d 823 (Ind.1963) (resident-taxpayer had public right where city's waterworks department was allegedly not authorized to contract for construction of equipment for fluoridation of public drinking water); *Davis Const. Co. v. Bd. of Comm'rs of Boone County,* 192 Ind. 144, 132 N.E. 629 (1921) (taxpayer had public right where allegedly unconstitutional statute sought to impose property tax in district in which he lived and owned property subject to assessment); *Brooks v. State, ex rel. Singer,* 162 Ind. 568, 70 N.E. 980 (1904) (citizen-voter of Ripley County had public interest in the constitutional apportionment of senators and representatives throughout the state); *Hamilton v. State ex rel. Bates,* 3 Ind. 452, 1852 WL 2934 (1852) (citizen-taxpayer of Marion County has public interest in the county auditor correctly discharging the duties of his office).

The supreme court discussed the public standing doctrine in *Embry v. O'Bannon,* 798 N.E.2d 157, wherein the appellant's action was grounded not on private rights, but rather on shared taxpayers' interest in the allegedly unconstitutional expenditure of public funds. One member of the court, writing separately, stressed the exceptional and limited nature of conferring standing based upon taxpayer status, noting "the 'availability of taxpayer or citizen standing' is limited to 'extreme circumstances'." *Id.* at 168–69 (Sullivan, J., concurring) (quoting *State ex rel. Cittadine,* 790 N.E.2d at 983).

■ Unlike the public interests found to exist and confer standing in *Cittadine* and *Embry,* rights created under the Act are private. "[T]he underlying policy and purpose of the Act ... is designed for the humanitarian purpose of providing injured workers with an expeditious and adequate remedy." *Sims v. United States Fidelity & Guar. Co.,* 782 N.E.2d 345, 352 (Ind. 2003) (citations omitted); *see also Walker v. State, Muscatatuck State Dev. Ctr.,* 694 N.E.2d 258, 268 (Ind.1998) ("worker's compensation scheme is designed to shift the economic burden for employment related injuries from the employee to the employer and consumers of its products") (citations omitted). Further, because "the Act imposes obligations on worker's compensation carriers that are unique within the insurance industry[,] ... the General Assembly has drawn classifications between injured claimants and insurers." *Sims v. United States Fidelity & Guar. Co.,* 782 N.E.2d at 354. Therefore, the Act confers a private, not public, right, i.e., a private right to workers injured in work-related accidents. *Id.* The Board's alleged failure to fulfill its statutory obligations under the Act harms an injured worker's attorney only incidentally, if at all. The nexus

of harm must be more direct than is present here to confer standing under the public interest exception. *Compare State ex rel. Cittadine,* 790 N.E.2d 978 (motorists are directly harmed by INDOT's failure to comply with statutory obligations); *Miller v. City of Evansville,* 244 Ind. 1, 189 N.E.2d 823 (taxpayers are directly harmed by a city waterworks department's unauthorized construction contracts); *Davis Const. Co. v. Bd. of Comm'rs of Boone County,* 192 Ind. 144, 132 N.E. 629 (taxpayers are directly harmed by unconstitutional taxation schemes); *Brooks v. State ex rel. Singer,* 162 Ind. 568, 70 N.E. 980 (Indiana voters are directly harmed by unconstitutional senate and congressional apportionment schemes); *Hamilton v. State ex rel. Bates,* 3 Ind. 452 (Marion County citizens are directly harmed by the Marion County auditor's failure to correctly discharge his duties). Further, in the above cases, the absence of public standing would have foreclosed any challenge by anyone to the alleged violations. Here, any injured worker harmed by the Board's alleged violations may seek to enforce this statute in the absence of public standing.

Finally, Steinke claims standing under I.C. § 34–27–3–1 (West, PREMISE through 2005 Public Laws), contending "there is no requirement … the person seeking to enforce the duty actually have a stake in the outcome." *Appellant's Brief* at 13. Thus, the argument continues, "any citizen of the State of Indiana, including Mr. Steinke, has standing to enforce the mandates of the Workers' Compensation Act [sic]." *Id.* at 14. We have noted, however, "[a] party requesting mandate must have a clear and unquestioned legal right to the relief sought and must show that the respondent has an absolute duty to perform the act demanded." *Brant v. Custom Design Constructors Corp.,* 677 N.E.2d 92, 95

(Ind.Ct.App.1997). Thus, for instance, in *Nass v. State ex rel. Unity Team,* 718 N.E.2d 757 (Ind.Ct.App.1999), *trans. denied,* state executive employees had standing to seek an order of mandate under I.C. § 34–27–3–1 against the state auditor for refusing to honor wage assignments pursuant to a collective bargaining agreement. *See also Tippecanoe County Area Plan Comm'n v. Sheffield Dev., Inc.,* 181 Ind.App. 586, 394 N.E.2d 176 (Ind.Ct.App. 1979) (developers had standing where commission had a clear legal duty to approve the developers' preliminary plat); *cf. State ex rel. Rainey v. Board of Tr. of Indiana State Teachers' Ret. Fund,* 245 Ind. 693, 201 N.E.2d 564 (Ind.1964) (concluding the superior court lacked jurisdiction because appellant made no showing he had an absolute right to the relief asked for in his complaint for mandate). Therefore, I.C. § 34–27–3–1 does require that a claimant have a stake in the outcome.

Finally, we note that the purpose of the Act is to provide a forum for injured workers to adjudicate claims, not to assure that attorneys are able to generate fees by representing clients in worker's compensation matters. Thus, "[a]ny resulting benefit [to Steinke] … is merely incidental and bears no relation to the purpose of the [Act]. It is clear the legislation here in question is not intended to serve" the interests of attorneys. *Dep't of Public Welfare v. Bair,* 463 N.E.2d 1388, 1391 (Ind. Ct.App.1984).

Here, the Act protects the rights of workers injured in work-related accidents. Steinke makes no claim of being an injured worker. Thus, even assuming, *arguendo,* the Board is in violation of its statutory obligations, Steinke has demonstrated no legal duty owed him by the Board. Therefore, he is not the proper party to seek an

action of mandate because he does not have the requisite stake in the outcome.

■■■■■ Although we have concluded that Steinke did not have standing to file an action for mandate in this case, we take this opportunity to comment upon a topic that was the subject of much discussion at oral argument before this court[2]—the nature and scope of an action for mandate. An action for mandate is defined statutorily as follows: "An action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer, or person to compel the performance of any: (1) act that the law specifically requires; or (2) duty resulting from any office, trust, or station." I.C. § 34–27–3–1. An action for mandate, an extraordinary remedy of an equitable nature, is generally viewed with disfavor. *State ex rel. Woodford v. Marion Superior Court,* 655 N.E.2d 63 (Ind.1995). " 'Mandamus does not lie unless the petitioner has a clear and unquestioned right to relief and the respondent has failed to perform a clear, absolute, and imperative duty imposed by law.' " 718 N.E.2d at 766 (quoting *Yater v. Hancock County Bd. of Health,* 677 N.E.2d 526, 528 (Ind.Ct.App.1997)). We will reverse the granting of a party's request for mandate only when the evidence reveals no conflict and points unerringly to the opposite conclusion. *Nass v. State ex rel. Unity Team,* 718 N.E.2d 757.

The primary question explored at oral argument with respect to an action for mandate was: is that mechanism intended to compel adherence to general obligations or mandate specific acts? The principal cases cited by Steinke in support of reversing the decision in favor of the Board Members, *Bates* and *Cittadine,* are instructive. The background facts in *Bates* are that the state auditor and representatives from all Indiana congressional districts but the Sixth gathered for the purpose of equalizing the valuation of property in the several districts. As a result of that meeting, property values in Marion County were increased by fifteen percent. Bates was a Marion County citizen and property owner. He submitted a form for tax purposes asking the Marion County Auditor (the Auditor) to certify the value of his property without reflecting the aforementioned fifteen percent increase. The Auditor refused to certify the form without the fifteen-percent increase. Bates sought and was granted a writ of mandamus, which commanded the Auditor to certify and issue the form without including the fifteen-percent increase. The supreme court affirmed the writ after concluding the conference that imposed the equalization rates acted without statutory authority. In doing so, the court confirmed that Bates had standing to seek the writ, and that a writ of mandamus was a proper vehicle to accomplish the task.

More than 150 years later, in *Cittadine,* the Indiana Supreme Court effectively revived and expanded upon *Bates* with respect to the viability of the public standing doctrine in the context of a mandamus action. In *Cittadine,* the relator-appellant unsuccessfully sought a writ of mandamus to require the Indiana Department of Transportation to enforce against Michigan Southern Railroad ("Michigan Southern") an Indiana statute requiring railroad companies to maintain unobstructed views at railroad crossings. The court took the opportunity in *Cittadine* to clarify the continued vitality of the public standing doctrine in such settings. Indeed, in light of the court's ultimate holding that the action

---

2. Oral argument was conducted in this case in Indianapolis on May 19, 2005. We commend the parties for the quality of their respective presentations at that proceeding.

was moot because the statute in question had been amended, it seems the main point of *Cittadine* was to verify the continued validity of the public standing doctrine.

 In both *Cittadine* and *Bates,* mandamus was sought to compel the defendant to perform a specific act, albeit an act that arguably brought the defendant into compliance with a statutory duty. In fact, that is the closest parallel between those cases and this, i.e., that the petitioner sought a judicial mandate to order the defendant to act consistent with a statutory duty. A glaring difference between this case and those cases, however, lies in the nature of the action for which mandate is sought. In *Cittadine* and *Bates,* the petitioners sought to compel specific acts. Here, on the other hand, Steinke sought to compel the Board to "do" something much more general, i.e., to adhere to eligibility requirements for membership on the Board. No specific action on the part of the Board Members was sought, and therein lies the problem. The "act" that Steinke seeks to compel is not really an act at all. Rather, it is a general request that the Board Members adhere to the rules pertaining to membership requirements. Such an edict in this circumstance is not within the purview of the judiciary.

The Board is an administrative body that was created by the General Assembly and placed under the auspices of the Governor of the State of Indiana. By statute, the Governor was given the power to appoint the members of the Board, and to remove any member "at any time for incompetency, neglect of duty, misconduct in office, or other good cause to be stated in writing[.]" I.C. § 22–3–1–1 (West, PREMISE through 2005 Public Laws). Inasmuch as the Board is a part of the executive branch of state government and operates under the supervision of the Gov-

ernor of Indiana, the task of insuring that candidates for membership on the Board are eligible to serve pursuant to conditions prescribed by statute, and that members of the Board subsequently adhere thereto, properly falls upon the executive branch, not the judiciary. For all of the reasons set forth above, the decision of the trial court granting the Board's motion to dismiss is affirmed.

Judgment affirmed.

NAJAM, J., and BAILEY, J., concur.