**In the Matter of the Paternity of Minor Child.**

**J.R.W. by Kevin L. JEMERSON and Mamie Darlene Jemerson as Guardians and Next of Friend, Appellants,**

v.

**Jack WATTERSON and Nathanial Green, Appellees.**

No. 10A05–0706–JV–323.

Court of Appeals of Indiana.

Dec. 6, 2007.

Rachele L. Cummins, Smith Bartlett Heeke Carpenter, Thompson & Fondrisi, LLC, Jeffersonville, IN, Attorney for Appellants.

Robert L. Barlow II, Barlow Law Office, Madison, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Kevin and Mamie Darlene Jemerson ("the Jemersons") appeal the trial court's grant of Jack Watterson's ("Jack") motion to dismiss their paternity action for lack of standing.

We affirm.

### ISSUE

Whether the Jemersons had standing as next friends to bring a paternity action on behalf of their maternal nephew, J.W., as his next friends when a panel of this court had previously held that their guardianship rights with respect to J.W. should be dissolved.

### FACTS[1]

Tammy McKay ("Tammy") and Jack began a romantic relationship when Tammy was already pregnant with another man's child. Tammy gave birth to J.W. on December 25, 1995. Two days later, Jack executed a paternity affidavit, wherein he averred that he was J.W.'s father. Tammy and Jack married on April 28, 1996. Their union produced a daughter, B.W. The marriage ended in divorce on October 28, 2002, and the dissolution decree identified J.W. and B.W. as children of the marriage. The matter of J.W.'s paternity

---

1. Jack's brief does not comply with Indiana Appellate Rule 46(B)(1), which permits the appellee to omit the statement of issues, statement of the case, and the statement of facts if the appellee agrees with those statements as expressed in the appellant's brief. Indiana Appellate Rule 46(B)(1) requires the appellee to expressly state its agreement with the appellant's statements; however, Jack's brief includes no such statement. We remind counsel for Jack to abide by these requirements.

was not litigated during the divorce proceedings. The divorce court awarded Tammy custody of J.W. and B.W., granted Jack visitation rights, and ordered him to pay child support.

Subsequently, Tammy and Jack each remarried. In the fall of 2005, Tammy was diagnosed with terminal cancer. Tammy wrote a will in which she expressed her "strongest desire that no other relative of [her] children, including their non-custodial parent and natural father, be appointed guardian of [her] said children." *See Watterson v. Jemerson*, No. 39A01–0609–CV–403, 865 N.E.2d 719 (Ind.Ct.App. April 16, 2007). She requested that her sister, Mamie Darlene Jemerson, be the guardian of J.W. and B.W. Soon thereafter, Mamie and Kevin Jemerson filed a petition for guardianship and a motion to appoint a guardian ad litem ("GAL") for the children. The trial court granted the Jemersons' motion to appoint a GAL. On March 22, 2006, the GAL recommended that the Jemersons be named guardians of J.W. and B.W. Tammy died four days later.

On April 6, 2006, the Jemersons filed an amended petition for guardianship. On the following day, the trial court granted temporary guardianship to the Jemersons, ordered visitation for Jack, and took the matter of permanent guardianship under advisement. On June 2, 2006, the trial court awarded the Jemersons permanent guardianship of B.W. and J.W., and imposed a visitation and child support order for Jack. On June 30, 2006, Jack filed a motion to correct error, challenging the trial court's grant of guardianship to the Jemersons. The trial court conducted a hearing on Jack's motion on July 31, 2006. On August 21, 2006, the trial court entered an order stating its reasons for awarding guardianship rights to the Jemersons and denied Jack's motion. Jack appealed to this court.

In the meantime, a paternity test administered on January 26, 2007, determined that Nathanial R. Green ("Green") was J.W.'s biological father. On March 2, 2007, the Jemersons, on behalf of J.W., filed a Verified Petition to Establish Paternity in Nathanial Green and Set Aside Paternity Affidavit of Jack Watterson. On March 26, 2007, Jack filed a motion to dismiss the Jemersons' action pursuant to Indiana Trial Rule 12(B)(8). On April 16, 2007, in an unpublished memorandum decision, a panel of this court reversed the trial court's grant of guardianship rights to the Jemersons as an abuse of discretion, stating, in pertinent part,

> ... Jack dated Tammy during her pregnancy, married her when J.W. was four months old, and lived with him as a parent until he was five years old. J.W.'s biological father never established paternity or paid support, and his stepfather never adopted him. J.W. was decreed to be a child of Jack and Tammy's marriage, and Jack was granted visitation and ordered to pay support. We further observe that Jack is the biological father of B.W., J.W.'s sister, and the Jemersons concede that 'it is in the best interest of the children that they remain together.' In sum, we can find no persuasive grounds for treating Jack as anything other than a natural parent to both children for purposes of this guardianship proceeding.

\* \* \*

It appears to us that Jack was never given the benefit of 'the important and strong presumption that a child's best interests are best served by placement with the natural parent' because he had not been the children's custodial parent (and therefore had limited time and involvement with the children) and because he had not led as stable and as

successful a lifestyle as the Jemersons, who had greater access to the children during Tammy's illness. We believe that a reasonable trier of fact could not have concluded that the trial court's judgment was established by clear and convincing evidence and that the trial court abused its discretion in granting the Jemersons' petition for guardianship. Therefore, we reverse. We direct the trial court to dismiss the guardianship and to return the children to the custody of their father.

*Watterson* at 6–7, 11 (internal citation omitted). We also noted that the trial court's order failed to include the "detailed and specific findings required to support the removal of the children from their natural parent." *Id.* In response to our memorandum decision, the trial court entered an order dismissing the guardianship and ordered J.W. and B.W. returned to Jack's custody. On April 25, 2007, the Jemersons filed a response to Jack's motion to dismiss.

On May 2, 2007, Jack filed a second motion to dismiss, this time citing our recent memorandum decision. Jack argued that the Jemersons lacked standing to bring a paternity action on behalf of J.W. because their guardianship had been dismissed. The Jemersons filed a verified petition to establish paternity in Nathanial Green and set aside the paternity affidavit of Jack Watterson. The trial court conducted a hearing on Jack's motions and heard the parties' arguments. Subsequently, on May 25, 2007, the trial court dismissed the Jemersons' paternity action for lack of standing, from which order the Jemersons now appeal.

## DECISION

■ When reviewing a trial court's dismissal for lack of standing, we apply a *de novo* standard of review, and therefore, deference to the trial court's decision is not required. *In re Public Benev. Trust of Crume*, 829 N.E.2d 1039, 1043 (Ind.Ct. App.2005). The facts alleged in the complaint must be taken as true, and dismissal for lack of standing is appropriate only where it appears that the plaintiff cannot be granted relief under any set of facts. *In re Custody of G.J.*, 796 N.E.2d 756, 759 (Ind.Ct.App.2003).

■ The standing requirement assures that litigation will be actively and vigorously contested, as plaintiffs must demonstrate a personal stake in the litigation's outcome and must show they have sustained, or are in immediate danger of sustaining, a direct injury as a result of the defendant's conduct. *Crume*, 829 N.E.2d at 1043.

> Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.

*PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 714 (Ind.Ct.App.2004).

■ The Jemersons argue that the trial court erred when it granted Jack's motion to dismiss. Specifically, they contend that they had standing as J.W.'s next friends to bring a paternity action on his behalf.

Indiana Code section 31–14–4–1 specifically identifies those persons permitted under Indiana law to bring a paternity action, as follows:

> Sec. 1. A paternity action may be filed by the following persons:
>
> (1) The mother or expectant mother.
>
> (2) A man alleging that:
>
> (A) he is the child's biological father; or

(B) he is the expectant father of an unborn child.

(3) The mother and a man alleging that he is her child's biological father, filing jointly.

(4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.

(5) *A child.*

(6) The division of family and children or a county office of family and children under section 3 of this chapter.

(7) The prosecuting attorney under section 2 of this chapter.

*Id.* (emphasis added).

Indiana Code section 31–14–5–2 reads,

A person less than eighteen (18) years of age may file a petition if the person is competent except for the person's age. *A person who is otherwise incompetent may file a petition through the person's guardian, guardian ad litem, or next friend.*

Ind.Code § 31–14–5–2 (emphasis added).

The Jemersons contend that despite the dissolution of their guardianship, they retained next friend status, and therefore, had standing to bring a paternity action on behalf of J.W. The Jemersons argue that although the latter statute does not provide any limitation as to who may act as a child's next friend, "[c]aselaw directs . . . that anyone can act as the child's next friend *without limitation.*" Jemersons' Br. 5 (emphasis added).

Jack responds that caselaw does not support this "unfounded contention." Jack's Br. 4. He contends that only parents, guardians, and prosecutors may bring paternity actions as next friends of children. He argues further that because the Jemersons are not J.W.'s parents, his guardians, or prosecutors, they lack standing to bring this paternity action on J.W.'s

behalf. In support of his position, Jack argues,

Each of the cases adjudicated by the Court of Appeals of Indiana known to discuss the right to file on behalf of the child as next friend show that only a parent, prosecutor, or guardian may act as a child's next friend. *Miller v. Bradley (In re B. W.M.),* 826 N.E.2d 706 (Ind.Ct.App.2005) (paternity action by B.W.M.'s next friend, child's *mother*); *Lakins v. Feldman (In re K.L.O.),* 816 N.E.2d 906 (Ind.Ct.App.2004) (paternity action by K.L.O.'s next friend, child's *mother*); *R.P.D. by Dick v. Indiana Advocates for Children, Inc.,* 708 N.E.2d 916 (Ind.Ct.App.1999) (paternity action by R.P.D.'s next friend, child's *mother*); *N.D.J. v. K.S.P. (In re N.D.J.),* 765 N.E.2d 682 (Ind.Ct.App.2005 [2002]) (paternity action by N.D.J.'s [ ] next friend, *prosecutor*); *J.W.L. by J.L.M. v. A.L.P. [A.J.P.],* 672 N.E.2d 966 (Ind.Ct.App.1996) (paternity suit by J.W.L.'s next friend, child's *mother*); *P.L.M. v. Mitchell,* 661 N.E.2d 898 (Ind.Ct.App. 1996), (paternity suit by next friend, child's *father*); *Clark v. Kenley,* 646 N.E.2d 76 (Ind.Ct.App.1995) (paternity suit by D.D.'s next friend, the *prosecutor*); *Hood v. G.D.H.,* 599 N.E.2d 237 (Ind.Ct.App.1992) (paternity action by G.D.H.'s next friend, child's *mother*); *Sutton v. Boes (In re H.J.B.),* 829 N.E.2d 157 (Ind.Ct.App.2005) (paternity action by H.J.B.'s next friend, child's *guardian* grandmother (both natural parents had died)); *Goodman v. State,* 611 N.E.2d 679 (Ind.Ct.App.1993) (paternity action by child's next friend, *prosecutor*).

Jack's Br. 3 (emphasis in original). Our independent research and review of Jack's proffered cases support Jack's contention that only parents, guardians, guardians ad litem, and prosecutors may bring paternity actions as next friends of children.

Moreover, we do not find that a next friend is required under the facts and circumstances surrounding this case. According to American Jurisprudence,

As a general rule, a next friend for an infant plaintiff is required only when the infant is without a parent or general guardian, since ordinarily it is the duty of the parent or general guardian of an infant to institute and prosecute an action on behalf of the infant for the protection of his rights.

42 Am.Jur.2d *Infants* § 158 (2000). Under the circumstances, the Jemersons cannot reasonably argue that J.W. is without a parent. We have previously found "no persuasive grounds for treating Jack as anything other than a natural parent" to J.W. and B.W. *Watterson* at 7. Moreover, since our decision, the Jemersons have advanced proof to a near certainty that Green is J.W.'s biological father.

Because both Jack and Green—as the legal father and biological father, respectively—bear the duty of acting on behalf of J.W., no proper basis exists upon which the Jemersons may assert standing as J.W.'s next friends. The trial court properly granted Jack's motion to dismiss for lack of standing because the Jemersons cannot be granted relief under any set of facts.

Affirmed.

MAY, J., and CRONE, J., concur.