**In re the Paternity of R.J.S., Robert & Linda Mullen, Next Friends, Appellants–Petitioners,**

v.

**Anthony and Mary STOCKTON, Guardians,**

and

**Amanda Stockton, Mother, Appellees– Respondents.**

No. 47A05–0712–JV–678.

Court of Appeals of Indiana.

May 20, 2008.

---

Michael K. Ausbrook, Bloomington, IN, Attorney for Appellant.

## OPINION

BARNES, Judge.

### Case Summary

Robert and Linda Mullen appeal the dismissal of their petition to establish paternity of R.J.S. We affirm.

### Issue

The dispositive issue is whether the Mullens, as alleged paternal grandparents, have standing to seek an order establishing paternity of R.J.S.

### Facts

R.J.S. was born on April 23, 2005, to Amanda Stockton. Amanda represented to the Mullens that their son, Ryan Mullen, was the child's father. Ryan had died on February 2, 2005. Anthony and Mary Stockton, Amanda's parents, were named R.J.S.'s guardians.

On July 25, 2007, the Mullens filed a petition to establish paternity of R.J.S., naming themselves next friends of R.J.S. On the same date, they filed a petition for grandparent visitation with R.J.S. On August 3, 2007, the Stocktons filed a motion to dismiss the petition to establish paternity, claiming that the Mullens lacked standing to file such a petition and that, in any event, the petition was time barred by two different statutes of limitation. The trial court granted the motion to dismiss on August 15, 2007; the dismissal was with prejudice.

The Mullens did not receive notice of the trial court's dismissal until August 27, 2007. Before that date, but after the motion to dismiss already was issued, the Mullens had filed a response to the motion to dismiss, claiming the Stocktons were equitably estopped from moving to dismiss. Attached to the response was an affidavit signed by the Mullens, asserting that the Stocktons always had acknowledged Ryan as R.J.S.'s father, that they had told the Mullens that they could have visitation with R.J.S., and that the Mullens had had some visitation with R.J.S.

On September 12, 2007, the Mullens filed a combined motion for leave to amend their paternity petition and motion to correct error. The trial court did not rule on these motions. After the motion to correct error was deemed denied, the Mullens initiated this appeal. The Mullens filed a motion with this court, requesting that we suspend consideration of the appeal and remand to the trial court for a ruling on the motion for leave to amend. Our motions panel denied this motion, and the case is now before us on the merits.

### Analysis

The Stocktons have not filed an appellee's brief. When an appellee fails to file a brief, we need not develop arguments for him or her. *Blimpie Int'l, Inc. v. Choi,* 822 N.E.2d 1091, 1094 (Ind.Ct.App.2005). This circumstance does not relieve us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required. *Id.* Rather, we may reverse the trial court if the appellant makes a prima facie showing of reversible error. *Id.* "Prima facie" in this context is defined as "at first sight, on first appearance, or on the face of it." *Id.* If an appellant does not meet this burden, we will affirm. *Id.*

The Stocktons moved to dismiss the Mullens' petition to establish paternity

for three reasons: that the Mullens lacked standing to file such a petition, and that it was filed outside the time provided by two different statutes of limitation.[1] The trial court did not specify upon what basis it was granting the motion to dismiss. We will affirm the granting of a motion to dismiss if it is sustainable on any theory or basis found in the record. *Hammons v. Jenkins–Griffith,* 764 N.E.2d 303, 305 (Ind.Ct.App.2002). We will focus our analysis on whether the Mullens had standing to file a paternity petition.

A motion to dismiss for lack of standing is properly treated as a motion to dismiss under Indiana Trial Rule 12(B)(6). *State ex rel. Steinke v. Coriden,* 831 N.E.2d 751, 754 (Ind.Ct.App.2005), *trans. denied.* When reviewing a ruling on a Rule 12(B)(6) motion, we take as true all allegations upon the face of the complaint. *Id.* A court may dismiss only if the plaintiff would not be entitled to relief under any set of facts admissible under the allegations of the complaint. *Id.* We review the granting of a motion to dismiss for lack of standing de novo. *Id.* "Reversal is appropriate if an error of law is demonstrated." *Id.*

Indiana Code Section 31–14–4–1 states:

A paternity action may be filed by the following persons:

(1) The mother or expectant mother.

(2) A man alleging that:
  (A) he is the child's biological father; or
  (B) he is the expectant father of an unborn child.

(3) The mother and a man alleging that he is her child's biological father, filing jointly.

(4) The expectant mother and a man alleging that he is the biological father of her unborn child, filing jointly.

(5) A child.

(6) The department or a county office of family and children under section 3 of this chapter.

(7) The prosecuting attorney under section 2 of this chapter.

Clearly, as alleged grandparents, the Mullens do not fall under any of the statute's express declarations of who may file a petition to establish paternity. Thus, the Mullens seek to have standing to file a paternity action as R.J.S.'s next friend. Indiana Code Section 31–14–5–2(a) states, "A person less than eighteen (18) years of age may file a petition if the person is competent except for the person's age. A person who is otherwise incompetent may file a petition through the person's guardian, guardian ad litem, or next friend."[2]

There is no statutory definition of "next friend." There also is scant case law defining that term. This court, however,

---

1. Indiana Code Section 31–14–5–3 provides generally that a paternity action *not* filed by the child must be filed within two years of a child's birth, subject to certain exceptions not applicable here. Notwithstanding this statute, Indiana Code Section 31–14–5–5 provides that such a paternity action must be filed either within the lifetime of the alleged father or within five months of his death.

2. We note that a child may file a paternity petition at any time before the child reaches twenty years of age. Ind.Code § 31–14–5–2(b). This court has held that where an adult files a paternity action as a child's next friend, this twenty-year time limitation for filing such an action applies, and not the much shorter limitation periods that would apply if the adult was filing on a paternity action on his or her own behalf. *See In re Paternity of K.L.O.,* 816 N.E.2d 906, 908 (Ind.Ct.App. 2004); *Matter of Paternity of P.L.M. by Mitchell,* 661 N.E.2d 898, 900 (Ind.Ct.App.1996), *trans. denied.* Thus, if the Mullens were proper next friends of R.J.S., their petition to establish paternity would not have been time-barred.

recently addressed the issue in *Jemerson v. Watterson*, 877 N.E.2d 487 (Ind.Ct.App. 2007). There, the sister of a child's deceased mother filed a petition to establish paternity of the child. The sister had been the child's guardian, but this court had ordered that the guardianship be dissolved. Thereafter, the child was placed in the legal custody of the mother's former husband, who was not the child's biological father but who had executed a paternity affidavit for the child. Additionally, the biological father had been identified through genetic testing. After receiving the results of this test, the sister, acting as the child's next friend, filed a petition to establish paternity of the child in the biological father. The ex-husband moved to dismiss the paternity petition, and the trial court granted the motion.

We held that the sister lacked standing as the child's next friend to file a paternity action. *Jemerson*, 877 N.E.2d at 491–92. We began by reviewing a long line of cases where paternity actions had been filed by a child's next friend and concluded, "Our independent research and review of [the ex-husband's] proffered cases support [the ex-husband's] contention that only parents, guardians, guardians ad litem, and prosecutors may bring paternity actions as next friends of children." *Id.* at 491.[3]

The Mullens take issue with this holding. They note, correctly, that some of the cases cited by this court and the ex-husband said, "There is no limitation provided in the statute as to who may act as the child's next friend." *Hood v. G.D.H. by Elliott*, 599 N.E.2d 237, 241 (Ind.Ct.App. 1992). We reject the Mullens' invitation to rely on this language to suggest that there truly is no limit on who may file a paternity petition as a child's next friend. The

"no limitation" language must be read in the context of the cases in which they appeared; namely, cases in which the "next friend" was a parent, guardian, or prosecutor. We do not believe the legislature could have intended absolutely unfettered discretion by anyone to intervene in the life of a child by filing a paternity petition.

Additionally, our review of who had actually filed paternity petitions in existing case law was not the sole basis for our decision rejecting the sister's status as the child's next friend. We also observed:

> As a general rule, a next friend for an infant plaintiff is required only when the infant is without a parent or general guardian, since ordinarily it is the duty of the parent or general guardian of an infant to institute and prosecute an action on behalf of the infant for the protection of his rights.

*Jemerson*, 877 N.E.2d at 492 (quoting 42 Am.Jur.2d Infants § 158 (2000)). We also note that unlike a guardian or guardian ad litem, a "next friend" generally is not a court-appointed individual. *See* 42 Am. Jur.2d Infants § 158 (2000). Because the child in *Jemerson* had both a legal custodian, the deceased mother's ex-husband, and a putative biological father, we concluded that the sister could not assert standing as a next friend on behalf of the child. *Jemerson*, 877 N.E.2d at 492. Rather, the legal custodial father and/or putative biological father bore the duty of acting on behalf of the child. *Id.*

The Supreme Court of Nebraska also has concluded that alleged paternal grandparents lack standing to establish paternity of a child under that state's statutes allowing for paternity petitions to be filed

---

**3.** To clarify this statement somewhat, the "parent" of a child in at least one of these cases was a *putative* father. *See Mitchell*, 661 N.E.2d at 899. In other words, he was merely alleging that he was the child's father at the time the paternity action was filed.

by a child's next friend. *See Zoucha v. Henn,* 258 Neb. 611, 604 N.W.2d 828, 831 (2000). Specifically, the court defined "next friend" as " 'one who, *in the absence of a guardian,* acts for the benefit of an infant.' " *Id.* (quoting *State on behalf of B.A.T. v. S.K.D.,* 246 Neb. 616, 522 N.W.2d 393, 394 (1994)) (emphasis added). Because the child was living with his mother, his natural guardian, there was no basis for a next friend to initiate a paternity action on the child's behalf. *Id.*

It is conceivable that there could be a situation where a child has no physically present natural parents and no court-appointed guardian, in which case a third party could initiate a paternity proceeding on the child's behalf as a next friend. Here, R.J.S. has a living natural mother and two court-appointed guardians, his maternal grandparents. The law has entrusted safeguarding of his interests to those persons. It is up to those persons to decide whether to initiate a paternity proceeding on his behalf. The Mullens are not entitled to circumvent the authority entrusted in R.J.S.'s natural and court-appointed guardians by filing a paternity action as his next friend.

We are fully cognizant that the legislature has enacted modest measures to allow grandparents to seek visitation with their grandchildren. *See* Ind.Code § 31–17–5–1.[4] It has not, however, seen fit to allow alleged grandparents to file paternity actions. The wisdom of granting such permission ought to be left to the legislature.[5] Allowing the Mullens to proceed with a paternity action as R.J.S.'s next friend would circumvent what we presume to be the legislature's deliberate choice not to include alleged grandparents as persons who may file a paternity action.

Finally, we mention that the Mullens again requested that we suspend consideration of this appeal so that the trial court has an opportunity to rule on their motion to amend their complaint; our motions panel already denied such a request. The purpose of amending their complaint was to include allegations that purportedly would support a finding that the Stocktons were equitably estopped from asserting the applicable statutes of limitation in this case. Such an amendment would be futile. Aside from the statutes of limitation, the Mullens lack standing to establish paternity of R.J.S. and there is no conceivable amendment that could cure that problem.

### Conclusion

The trial court's dismissal of the Mullens' petition to establish paternity of R.J.S. was proper because they lack standing to file such a petition. We affirm.

Affirmed.

CRONE, J., and BRADFORD, J., concur.

---

4. The grandparent visitation statute says that visitation with a child born out of wedlock may not be awarded "if the child's father has not established paternity in relation to the child." I.C. § 31–17–5–1.

5. There also might be potential constitutional implications in permitting grandparents to initiate a paternity proceeding over the objec-

tions of a natural mother. "[T]he Fourteenth Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody and control of their children." *Crafton v. Gibson,* 752 N.E.2d 78, 84 (Ind.Ct.App.2001) (citing *Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)).