# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 27 2020, 5:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
ALLEGED FATHER

Amy Karozos
Indianapolis, Indiana

ATTORNEY FOR APPELLANT MOTHER

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of M.L., B.L., & L.L. (Children) and S.A. (Alleged Father) and T.L. (Mother);

S.A. (Alleged Father) and T.L. (Mother),

*Appellants-Defendants,*

v.

The Indiana Department of Child Services,

March 27, 2020

Court of Appeals Case No.
19A-JT-2267

Appeal from the Knox Superior Court

The Honorable Gara U. Lee, Judge

Trial Court Cause No.
42D01-1902-JT-2
42D01-1902-JT-3
42D01-1902-JT-4



*Appellee-Plaintiff*

**May, Judge.**

T.L. ("Mother") and S.A. ("Father")[1] (collectively, "Parents") appeal the involuntary termination of their parental rights to M.L., B.L., and T.L. (collectively, "Children"). They present multiple issues for our review, which we restate as:

> 1. Whether the trial court properly exercised personal jurisdiction over Mother when the Department of Child Services ("DCS") allegedly failed to serve Mother with notice of the termination proceedings; and
>
> 2. Whether DCS violated Father's due process rights when it did not file a paternity action on Father's behalf.

We affirm.

# Facts and Procedural History

---

[1] The record reveals Father took a DNA test to prove he was Children's biological father, but he did not complete steps to establish legal paternity. Because he did not establish legal paternity of Children, Father is listed as Alleged Father in the orders terminating his parental rights to Children.

[2] Parents are the biological parents of B.L., born March 18, 2011; M.L., born March 27, 2012; and L.L., born June 12, 2015.  On August 22, 2106, DCS received a report that M.L. and B.L. were "wandering the streets looking for food. . . . [B.L] was wearing only a diaper [and] [M.L.] was dirty and clothed only in pants."  (App. Vol. II at 25.)[2]  When confronted by DCS, Father admitted "this was the third such incident" and Mother admitted that M.L. and B.L. "had eloped from the home seven times in the past couple of months." (*Id*.)  During an earlier incident when M.L. and B.L. left the house unsupervised, police found marijuana in Father's pocket and Father was arrested for possession of marijuana.

[3] On August 24, 2016, DCS filed a petition alleging Children were Children in Need of Services ("CHINS") based on Parents' failure to supervise Children and Father's substance abuse problem.  The same day, the trial court held detention and initial hearings on the matter, during which Parents waived counsel and admitted Children were CHINS.  On September 27, 2016, the trial court entered its dispositional order requiring Parents to

> contact the DCS Family Case Manager (FCM) weekly; notify the FCM of address changes or changes in household composition; notify the FCM of any arrests or criminal charges; refrain from criminal activity; keep all appointments; maintain safe, stable housing; secure and maintain a legal source of income; remain

---

[2] The trial court entered individual termination of parental rights orders for each child.  The orders are virtually identical; therefore, we will quote the termination order involving M.L. unless a finding was made specific to a particular child.

drug and alcohol free; submit to a substance abuse assessment and follow all treatment recommendations; submit to random drug/alcohol screens; submit to a parenting assessment and successfully complete all recommendations; attend all scheduled visitation with Child[ren]; . . . and provide the Child[ren] with a safe, secure, and nurturing environment.

(*Id*. at 26.) At the dispositional hearing, the trial court placed Children with their maternal grandmother; however, they were eventually placed in foster care, where they remained during the proceedings.

[4] At a status hearing on July 24, 2017, the trial court changed Children's permanency plan from reunification to adoption based on Parents' non-compliance with the case plan, services, and therapy. On February 27, 2019, DCS filed its petition to terminate Parents' parental rights to Children.[3] The trial court held factfinding hearings on April 26, June 14, and June 25, 2019. Father appeared at all factfinding hearings; Mother did not appear at all hearings, but she was represented by counsel at all hearings. On August 26, 2019, the trial court entered its order terminating Parents' rights to Children.

# Discussion and Decision

---

[3] The record indicates DCS first filed a petition to terminate Parents' rights to Children on February 23, 2018. That petition was dismissed on August 22, 2018. DCS filed a second petition to terminate Parents' rights to Children on August 20, 2018. That petition was dismissed on February 19, 2019, approximately one week prior to the current petition to terminate Parents' rights to Children. It is unclear from the record why the two prior petitions were dismissed.

[5]     We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[6]     "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

## 1. Personal Jurisdiction

[7]     Mother contends DCS did not prove she was given proper notice of any of the factfinding hearings and thus the trial court did not have personal jurisdiction over her. "'Personal jurisdiction refers to a court's power to impose judgment

on a particular defendant.' A challenge to personal jurisdiction is a question of law, which we review de novo." *Matter of K.P.G.*, 99 N.E.3d 677, 680 (Ind. Ct. App. 2018) (quoting *Boyer v. Smith*, 42 N.E.3d 505, 509 (Ind. 2015)), *trans. denied*. "The existence of personal jurisdiction requires effective service of process." *Ellis v. M&I Bank*, 960 N.E.2d 187, 192 (Ind. Ct. App. 2011). However, a "party can waive lack of personal jurisdiction and submit himself to the jurisdiction of the court if he responds or appears and does not contest the lack of jurisdiction." *Heartland Res., Inc. v. Bedel*, 903 N.E.2d 1004, 1007 (Ind. Ct. App. 2009).

[8] During the first factfinding hearing on April 26, 2019, Mother did not appear. Mother's counsel, who was present at the hearing, requested a continuance because Mother "called the Court this morning and indicated that she is ill with a couple of different conditions and is unable to appear this morning, so she had asked that I request a continuance for that reason." (Tr. Vol. II at 16.) The trial court asked Mother's counsel if Mother was hospitalized, and counsel indicated Mother was not. The trial court denied Mother's motion to continue and told Mother's counsel: "If you want to take a minute to contact her and notify her of that, I mean, let her know that if she wanted to still try to show up today, just because she's not right here this second, doesn't mean she couldn't appear at some point during the proceedings." (*Id.*) Mother's counsel indicated that Mother had directed her to, in the event the trial court denied her motion to continue, "basically continue to make arguments on her behalf[.]" (*Id.*) During the second and third factfinding hearings on June 14, and June 25, 2019,

Mother did not appear, but her counsel was present. There was no discussion regarding Mother's absences from those factfinding hearings.

[9] Mother's counsel was present at all hearings and did not raise the issue of personal jurisdiction, and thus it is waived. *See In re Paternity of T.M.Y.*, 725 N.E.2d 997, 1005 (Ind. Ct. App. 2000) (putative father waived personal jurisdiction argument on appeal because he did not first present it to the trial court), *reh'g denied*, *trans. denied*. To escape waiver, Mother argues DCS did not comply with the notice requirements set forth in Indiana Code section 31-35-2-6.5, which states in relevant part:

> (b) At least ten (10) days before a hearing on a petition or motion under this chapter:
>
>> (1) the person or entity who filed the petition to terminate the parent-child relationship under section 4 of this chapter; or
>>
>> (2) the person or entity who filed a motion to dismiss the petition to terminate the parent-child relationship under section 4.5(d) of this chapter;
>
> shall send notice of the review to the persons listed in subsections (c) and (d).
>
> (c) Except as provided in subsection (h), the following persons shall receive notice of a hearing on a petition or motion filed under this chapter:
>
>> (1) The child's parent, guardian, or custodian.

[10] "Compliance with the statutory procedure of the juvenile code is mandatory to effect termination of parental rights." *In re T.W.*, 831 N.E.2d 1242, 1246 (Ind. Ct. App. 2005). Although statutory notice "is a procedural precedent that must be performed prior to commencing an action," it is not "an element of plaintiff's claim." *Id.* Failure to comply with statutory notice is thus "a defense that must be asserted." *Id.* Once placed in issue, "the plaintiff bears the burden of proving compliance with the statute." *Id.*

[11] However, Mother also did not raise the issue of notice before the trial court, and thus it is waived. *See In re E.E.*, 853 N.E.2d 1037, 1043 (Ind. Ct. App. 2006) (father waived notice issue when he did not first present it before the trial court), *trans. denied.* To escape waiver, Mother could have argued any alleged lack of notice amounted to fundamental error. Fundamental error occurs when there exists "egregious trial errors. In order for this court to reverse based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm must be substantial and appear clearly and prospectively." *In re E.E.*, 853 N.E.2d at 1043 (internal citation omitted). Mother did not assert fundamental error on appeal.

[12] Waiver notwithstanding, we cannot conclude that any failure by DCS to serve Mother notice of the factfinding hearings is fundamental error. Mother was represented by counsel throughout the proceedings, which we have held is appropriate as long as the party's counsel is able to make argument and cross examine witnesses, which Mother's counsel did here in all three factfinding

hearings.  *See J.T. v. Marion Cty. Ofc. of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000) (no fundamental error when father not physically present at termination hearing because father was represented by counsel who presented argument and cross-examined witnesses), *reh'g denied*, *trans. denied*, *abrogated on other grounds by Baker v. Marion Cty. Ofc. of Family & Children*, 810 N.E.2d 1035, 1039 (Ind. 2004).[4]

## 2. Establishing Father's Legal Paternity

[13] As part of his services in the CHINS proceedings, Father worked with service providers on establishing legal paternity of Children; however, he had not done so by the time of the termination factfinding hearings.  Under Indiana Code section 31-34-15-6 (2012), which was active[5] at the time of the trial court's order:

> (a) . . . whenever a child who was born out of wedlock is:

---

[4] Father argues his "due process rights may have been impacted by Mother's absence [because] Mother could have supported Father's arguments[.]"  (Br. of Father at 17.)  In order for Father to assert a claim based on an allegation regarding personal jurisdiction over Mother, he must have standing to do so.  To have standing, "a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue." *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind. 1985).  Father has not presented any more than speculative injury, and thus his argument fails. *See State ex rel. Steinke v. Coriden*, 831 N.E.2d 751, 754 (Ind. Ct. App. 2005) (no standing when injury is hypothetical), *trans. denied*.

[5] Effective July 1, 2018, during the pendency of these proceedings, the statutory language of Indiana Code section 31-34-15-6(b) changed such that "shall" changed to "may," leaving to DCS's discretion whether to file a paternity action under these circumstances. *Compare* Ind. Code § 31-34-15-6(b) (2102) *with* Ind. Code § 31-34-15-6(b) (2018).

(1) or is alleged to be a child in need of services; and

(2) under the supervision of the department or a local office as a result of a court ordered out-of-home placement.

(b) The department or the local office shall refer a child's case to the local prosecuting attorney's office for the filing of a paternity action if the:

(1) identity of the alleged father is known; and

(2) department or the local office reasonably believes that establishing the paternity of the child would be beneficial to the child.

[14] DCS acknowledges it did not refer Children's paternity matters to the local prosecutor's office. However, Father did not present this issue before the trial court, which would have allowed the trial court to determine if DCS reasonably did not believe that "establishing paternity of the child would be beneficial to the child." Ind. Code § 31-35-15-6(b) (2012). Thus, Father has waived this issue from our review. *See McBride v. Monroe Cty. Ofc. of Family and Children*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003) (issue waived because it was not first presented before the trial court).

Waiver notwithstanding, we note that Indiana Code section 31-34-15-6 is part of a series of statutes regarding the services provided as part of a CHINS case. As the failure to provide services as part of a CHINS proceeding cannot be used to attack an order of termination, we reject Father's argument. *See In re H.L.*,

915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) ("failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law").

# Conclusion

The trial court properly exercised personal jurisdiction over Mother because Mother availed herself to the trial court's personal jurisdiction by communicating her absence to the trial court on the day of the first factfinding hearing. Additionally, Father lacks standing to appeal the issue of the trial court's personal jurisdiction over Mother. Finally, Father waived his argument regarding DCS's noncompliance with Indiana Code section 31-34-15-6(b) (2012) because he did not present the issue before the trial court. Waiver notwithstanding, Father cannot use a failure to provide services in a CHINS proceeding to attack a termination order. Accordingly, we affirm the involuntary termination of Parents' rights to Children.

Affirmed.

Crone, J., and Pyle, J., concur.