**COMMON COUNCIL OF MICHIGAN CITY, Indiana, Appellant,**

v.

**BOARD OF ZONING APPEALS OF MICHIGAN CITY, Indiana, James Masters, Esq., as Trustee of Land Trust No. 613200, and Herman & Kittle Properties, Inc., Appellees.**

No. 46A03–0709–CV–446.

Court of Appeals of Indiana.

Feb. 29, 2008.

---

James B. Meyer, Meyer & Wyatt, P.C., Gary, IN, Attorney for Appellant.

Thomas E. Mixdorf, Zeff A. Weiss, Abigail B. Cella, Ice Miller, LLP, Indianapolis, Craig V. Braje, Braje Nelson & Janes, LLP, Michigan City, IN, Attorneys for Appellee, Herman & Kittle Properties, Inc.

Edward A. Sullivan, Angela Kelver, Baker & Daniels, LLP, South Bend, IN, Attorneys for Appellee, Board of Zoning Appeals of Michigan City, Indiana.

## OPINION

BARNES, Judge.

### Case Summary

The Common Council of Michigan City ("Common Council") appeals the dismissal of its petition for writ of certiorari against the Board of Zoning Appeals of Michigan City ("the BZA") and its complaint for declaratory judgment seeking to disannex certain land. We affirm.

### Issues

The issues before us are:

I. whether the Common Council has standing to challenge a decision of the BZA; and

II. whether the Common Council has standing to seek the disannexation of land it had annexed in 1971.

### Facts

In 1971, James Masters, as trustee of a land trust, petitioned to have the Common Council annex certain real estate. The Common Council passed an ordinance approving the annexation, and the Michigan City mayor signed it. After the annexation, the land, which originally was agricultural, was zoned R–3, which allowed for construction of multi-family housing units.

On August 15, 2006, Herman & Kittle Properties, Inc., ("Herman & Kittle") filed with the Michigan City plan director an application for permission to construct an apartment complex on the land annexed in 1971. On September 26, 2006, the Common Council met and voted to rezone the property to R–1, which does not allow for construction of multi-family housing. The rezoning was made effective October 12, 2006. On November 15, 2006, the plan director notified Herman & Kittle that its building permit was denied because multi-family units were not permitted in the R–1 zoning classification. On February 13, 2007, the BZA reversed that denial and ordered that the building permit be issued, on the basis that the R–3 zoning in effect at the time the permit application was filed should control.

On March 15, 2007, the Common Council filed a petition for writ of certiorari with the trial court, seeking reversal of the BZA's ruling. The Common Council also filed a complaint for declaratory judgment seeking to disannex the subject property. Herman & Kittle and the BZA sought to dismiss both actions based on lack of standing. On August 8, 2007, the trial court granted the motion to dismiss both actions. The Common Council now appeals.

### Analysis

 A claim of lack of standing is properly treated as a motion to dismiss under Indiana Trial Rule 12(B)(6), failure to state a claim upon which relief may be granted. *State ex rel. Steinke v. Coriden,* 831 N.E.2d 751, 754 (Ind.Ct.App.2005), *trans. denied.* We review a trial court's decision to dismiss for lack of standing de novo. *Id.* The question of whether a party has standing is purely one of law and does not require deference to the trial court's determination. *Id.*

### I. Challenge to the BZA's Ruling

The Common Council first contends that it has standing to challenge the BZA's reversal of the denial of Herman & Kittle's building permit. Indiana Code Section 36–7–4–1003(a) states in part:

> Each person aggrieved by a decision of the board of zoning appeals or the legislative body may file with the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality.

The Common Council contends that it was "aggrieved" by the BZA's decision and, therefore, was entitled to challenge that decision.

There is, however, considerable case law holding that municipal bodies generally lack standing to challenge decisions of a board of zoning appeals because they are not "aggrieved persons." In a series of cases decided in the early 1970's, we analyzed the version of the certiorari statute in effect at the time, which in relevant part was worded nearly identically to the current statute:

> [A]ny person aggrieved by a decision of the board of zoning appeals may present to the circuit or superior court of the county in which the premises affected

are located a petition duly verified, setting forth that such decision is illegal in whole or in part, and specifying the grounds of the illegality.

*Metropolitan Dev. Comm'n of Marion County v. Cullison,* 151 Ind.App. 48, 49, 277 N.E.2d 905, 906 (1972) (quoting Ind. Code § 18–7–2–76 (1971)). Cullison addressed the right of the City of Indianapolis's Metropolitan Development Commission and City Division of Planning and Zoning to challenge by a writ of certiorari a variance granted by the local board of zoning appeals. We noted that the statute did not expressly authorize certiorari petitions by public officials. *Id.* at 50, 277 N.E.2d at 906.[1] We then undertook a thorough examination of the word "aggrieved" as used in cases from our supreme court. Those cases had held that the word "aggrieved" generally referred to " 'a substantial grievance, a denial of some personal or property right, or the imposition upon a party of a burden or obligation.' " *Id.* at 51, 277 N.E.2d at 907 (quoting *McFarland v. Pierce,* 151 Ind. 546, 548, 45 N.E. 706, 706 (1897)). " 'To be "aggrieved" is to have a legal right, the infringement of which by the decree complained of will cause pecuniary injury.' " *Id.,* 277 N.E.2d at 907.

Considering this definition of "aggrieved," we concluded there had been no attempt to show that the City of Indianapolis through its agencies was " 'aggrieved' in any legal sense. No attempt is made to show any property interest or any interest not common to the community as a whole." *Id.* at 52, 277 N.E.2d at 907–08. Furthermore, we rejected the City of Indianapolis's argument that it was entitled to challenge board of zoning appeals decisions on behalf of its citizens and in the interest of community development and policy. *Id.* at 52–53, 277 N.E.2d at 908. We stated:

[I]t has never, to our knowledge, been suggested in any reported decision of an Indiana court that the Legislature must provide such aggrieved persons with an official representative to assert that right for their benefit. Furthermore, it has never been held that the decisions of boards entrusted with the protection of the public interest cannot be made final as to that public interest.

*Id.* at 53, 277 N.E.2d at 908. Thus, we affirmed the dismissal of the City of Indianapolis's certiorari petition. *Id.,* 277 N.E.2d at 908. The basic premise of *Cullison* was reaffirmed by several cases decided shortly thereafter, as well as in more recent cases. *See, e.g., City of New Haven v. Allen County Bd. of Zoning Appeals,* 694 N.E.2d 306, 311–12 (Ind.Ct.App.1998), *trans. denied; Metropolitan Dev. Comm'n of Marion County v. Losche,* 156 Ind.App. 245, 246–47, 295 N.E.2d 836, 837 (1973).

In the thirty-five years since we decided *Cullison,* neither the General Assembly nor our supreme court have deemed it necessary to "correct" anything we said in *Cullison,* either by legislative amendment or by judicial overruling. In fact, our supreme court fairly recently stated, " '[A] party seeking to petition for certiorari on behalf of a community must show some special injury other than that sustained by the community as a whole.' " *Bagnall v. Town of Beverly Shores,* 726 N.E.2d 782, 786 (Ind.2000) (quoting *Robertson v. Board of Zoning Appeals, Town of Chesterton,* 699 N.E.2d 310, 315 (Ind.Ct.App. 1998)). This is a restating of *Cullison's* basic precept, and it is clear that a municipal legislative body, because it represents a community as a whole, generally does

---

1. From 1965 to 1969, the statute did authorize certiorari petitions by "the executive director of the Metropolitan Planning Department...." *Cullison,* 151 Ind.App. at 50, 277 N.E.2d at 906. Legislation passed in 1969 deleted this language. *Id.,* 277 N.E.2d at 906.

not suffer any special injury other than that sustained by the community as whole by a board of zoning appeals decision.[2]

█ We also note that in *Cullison* we all but invited the General Assembly to amend the certiorari statute, stating:

> Either the grant or the denial of a variance may infringe upon the legal interests of persons directly affected. Such persons (remonstrators) may elect to assert such grievances by petitioning for certiorari or they may decide to abandon their right to litigate just as they may elect not to sue for redress of other civil wrongs suffered. When no person who is aggrieved by the variance chooses to seek review by certiorari, the public interest may suffer. It can therefore be persuasively argued that some public official or agency should be authorized to seek judicial review in such cases. But when the Legislature has not made that authorization, courts should not be asked to do so by changing the long established and generally understood meaning of "aggrieved" in order to attain a result the Legislature has apparently decided is either unnecessary or undesirable.

*Cullison,* 151 Ind.App. at 53, 277 N.E.2d at 908. The General Assembly has yet to accept this invitation. Judicial interpretation of a statute, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation. *Fraley v. Minger,* 829 N.E.2d 476, 492 (Ind.2005). This is truer with decisions of our supreme court than this court. *See id.* Given the sheer length of time that has

passed since *Cullison,* we presume the General Assembly was satisfied with our holding.

█ This case concerns one municipal-level body overruling the decision of another municipal-level body. *Cullison* clearly demonstrates that it is left to a private citizen or entity to decide whether to take sides in such a disagreement. There is no indication in *Cullison* or any other case that the standing or lack thereof of a municipal body depends upon the nature of a board of zoning appeals ruling or the grounds for that ruling, i.e. whether it is the granting of a variance or, as here, the reversal of the denial of a building permit. The trial court correctly concluded that the Common Council lacked standing to file a petition for writ of certiorari and properly dismissed it.

## II. Disannexation

Next, the Common Council asserts that it had standing to bring a declaratory judgment action to disannex the land upon which the BZA granted Herman & Kittle permission to build an apartment complex. Annexation and disannexation proceedings generally are governed by Indiana Code Chapter 36–4–3. Indiana Code Section 36–4–3–11 allows for remonstrances following a municipality's adoption of an annexation ordinance; the statute specifies that landowners in the annexed territory are permitted to bring a remonstrance and that it must be filed within ninety days of the publication of the annexation ordinance. Indiana Code Section 36–4–3–15.5 permits owners of land within½ mile of annexed territory to appeal the annexation by claiming that the annexed territory is

---

**2.** This might not be the case if the municipality itself was a landowner affected by the decision. Michigan City did not own the property at issue here. The Common Council's argument that it is not acting in a representative capacity in challenging the BZA's decision is, frankly, confusing. The very reason for the Common Council's existence is to represent the Michigan City community as a whole; it does not exist for its own sake.

not contiguous to the annexing municipality; the appeal must be filed within either thirty or sixty days of the ordinance's publication. Indiana Code Section 36–4–3–16 allows property tax payers within the annexed territory to file a complaint against the annexing municipality if the municipality fails to implement the fiscal plan associated with the annexation. Finally, Indiana Code Section 36–4–3–17 allows property owners on the border of a municipality to file, with the works board of the municipality, a petition seeking disannexation.

Clearly, the Common Council does not fall under any of these statutes as a party permitted to challenge the continued validity of an annexation. Some time ago, our supreme court considered a case in which a property owner claimed that the City of Anderson on its own motion had disannexed the property in 1896. *See Pittsburg, C., C. & St. L. Ry. Co. v. City of Anderson,* 176 Ind. 16, 95 N.E. 363 (1911). The property owner relied on a statute in effect at the time that permitted the common council of a municipality to modify its borders by disannexing property, upon the petition of a qualified landowner. Our supreme court held that because there was no record that any property owner had petitioned for disannexation of the property, the City of Anderson was without authority to do so. *Id.* at 18, 95 N.E. at 363–64. The court observed generally that any doubts as to whether a municipality has the power to perform a certain function must be resolved against the municipality. *Id.,* 95 N.E. at 363. More specifically, "The municipal authorities can in no case alter the boundaries unless the power so to do is conferred upon them by the Legislature; such power, when conferred, must be exercised under the circumstances and in the manner prescribed." *Id.,* 95 N.E. at 363.

■ Here, no property owner of the land in question has requested the Common Council to disannex the land. Although the disannexation statute analyzed in *Pittsburg* differs from the current disannexation statute, both required a petition by owners of the property in question to seek disannexation. Under the strict terms of Indiana Code Section 36–4–3–17 and the interpretation of a similar statute in *Pittsburg,* the Common Council lacked authority to seek the property's disannexation.

■ Nevertheless, the Common Council contends it is entitled to seek a declaratory judgment ordering disannexation because the 1971 annexation ordinance allegedly is void. This court has, on very limited occasions, allowed municipal taxpayers and/or property owners to seek a declaratory judgment challenging the validity of an annexation in cases falling outside the strict parameters of the remonstrance and disannexation statutes. *See, e.g., Matter of Annexation Proposed by Ordinance No. X–02–93,* 652 N.E.2d 878, 879–80 (Ind.Ct. App.1995), *trans. denied.* However, no court has ever allowed a municipality to renege on its decision to annex property by filing a declaratory judgment action challenging the validity of that decision for any reason. Although not specifically addressing annexation questions, this court has frowned upon a municipality filing declaratory judgment actions with respect to the validity of its own ordinances. *See City of Mishawaka v. Mohney,* 156 Ind. App. 668, 673–74, 297 N.E.2d 858, 860–61 (1973). We decline to extend the limited right of municipal taxpayers and landowners to file declaratory judgment actions challenging the validity of an annexation to the municipality that approved the annexation in the first place. The trial court properly dismissed the Common Council's

declaratory judgment action for lack of standing.[3]

## Conclusion

The trial court was correct in concluding that the Common Council lacked standing to challenge the BZA's ruling and to seek disannexation of the subject land. We affirm the dismissal of the petition for certiorari and declaratory judgment complaint.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.

---

**3.** This case bears some similarities to our recent decision in *City of Charlestown Advisory Planning Commission v. KBJ, LLC,* 879 N.E.2d 599 (Ind.Ct.App., 2008). There, we affirmed the trial court's rejection of the City of Charlestown's argument that it was entitled to reverse a decision of an earlier administration to approve a subdivision replat; specifically, we held that the municipality was es-topped from not reapproving the replat. Op. at 604–05. We did not have to address standing issues in that case, because it was an appeal from a grant of a certiorari petition filed by a private party. Nonetheless, both that case and this one demonstrate the undesirability of a municipality trying to undo binding decisions made by an earlier administration.