Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEYS FOR APPELLANTS:

**JAMES A. FEDEROFF**
**JASON M. KUCHMAY**
Federoff Kuchmay LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES:

**RICHARD K. HELM**
Rockhill Pinnick LLP
Warsaw, Indiana

FILED

Sep 25 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DANIEL E. STUCKMAN, SR. and )
DANIEL E. STUCKMAN, JR., )
                              )
    Appellants, )
                              )
      vs. )      No. 43A03-1202-MI-69
                              )
KOSCIUSKO COUNTY BOARD OF )
ZONING APPEALS and the ESTATE OF )
GARY STUCKMAN, )
                              )
    Appellee. )

APPEAL FROM THE KOSCIUSKO CIRCUIT COURT
The Honorable Rex L. Reed, Judge
Cause No. 43C01-1003-MI-147

**September 25, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Daniel E. Stuckman, Sr., ("Daniel Sr.") and Daniel E. Stuckman, Jr., ("Daniel Jr.") (collectively "the Stuckmans"), appeal the trial court's judgment in favor of the Kosciusko County Board of Zoning Appeals ("the BZA") and the Estate of Gary Stuckman ("the Estate") (collectively "the Appellees"). The Stuckmans raise six issues, which we consolidate and restate as:

I. Whether the trial court erred in concluding that Daniel Jr. lacked standing to petition for certiorari; and,

II. Whether the BZA erred in granting Gary Stuckman's ("Gary") Request for an Exception to Modify and Change His Existing Nonconforming Use.

We affirm.

## Facts and Procedural History

Ned and Bertha Stuckman purchased Lots A through K of the Lake Papakeechie Subdivision Number 2 by land contract in the 1950's and opened an automobile salvage yard on Lots E through K. In 1975, a Kosciusko County Zoning Ordinance ("the Ordinance") took effect, and Ned and Bertha's land was zoned residential. However, their existing automobile salvage yard constituted a lawful, nonconforming use, and Ned and Bertha continued their operation. In the early 1980's, Ned and Bertha cleared brush from Lots A through D and began stacking vehicles in that area. The Board investigated complaints by area residents and subsequently brought an action for injunctive relief alleging that the family had expanded a preexisting nonconforming use in violation of the Ordinance. The trial court concluded that Ned, Bertha, and Gary had unlawfully expanded the automobile salvage yard to Lots A through D and ordered them to cease all salvage yard operations until they complied with certain restrictions.

2

On appeal, this court held that Ned, Bertha, and Gary had not impermissibly expanded their nonconforming use. Stuckman v. Kosciusko Board of Zoning Appeals, 495 N.E.2d 775, 779 (Ind. Ct. App. 1986), trans. granted. However, the Indiana Supreme Court granted transfer and concluded that Ned, Bertha, and Gary had violated the ordinance. Stuckman v. Kosciusko County Board of Zoning Appeals, 506 N.E.2d 1079, 1081 (Ind. 1987). In addition to the state court action, the parties were involved in a federal action relating to the property as well.

In February 1988, Ned, Bertha, Gary, the Papakeechie Protective Association ("Papakeechie"), and the Board of Zoning Appeals entered into a written Compromise Agreement ("the Agreement") to settle all issues concerning Lots A through K. The Agreement provided that Papakeechie would join with Ned, Bertha, and Gary to file an application for an exception for modification of a preexisting nonconforming use on Lots A through G. However, the Agreement placed restrictions, limitations, and covenants on the use of the property. For example, Ned, Bertha, and Gary agreed to construct an eight-foot high earthen mound beginning 180 feet from the east edge of Koher Road, ("the Buffer Mound"). Ned, Bertha, and Gary also agreed to plant pine trees on the Buffer Mound to provide additional screening. All salvage yard activities were to be conducted to the east or north of the Buffer Mound, and vehicles were to be stacked so as not to be visible from Koher Road. In addition, Ned, Bertha, and Gary agreed to refrain from installing a sign indicating the existence of a salvage yard or advertising items for sale, except as necessary to meet state requirements pertaining to a wrecker service.

Following the execution of the Agreement, Gary filed the request for an exception for modification of a preexisting nonconforming use. The petition was approved contingent upon Gary's strict adherence to the Agreement. Two years later, in 1990, Gary filed another request for an exception for modification of a preexisting nonconforming use seeking the BZA's approval to construct additional buildings on the property, which would provide inside storage for tires, parts, and salvage materials. The BZA also approved this request.

After Ned and Bertha died, Gary apparently inherited Lots A through G, and his brother, Daniel Sr., apparently inherited Lots H through K, which are immediately south of and adjacent to Gary's lots. Gary continued to operate the salvage yard on his lots, and Daniel Sr. operated Stuckman Sanitation on his lots. Daniel Sr. and his son, Daniel Jr., also own and operate Northern Indiana Recycling, LLC, on these lots, and Daniel Jr. owns and operates Stuckman and Son Trucking on the lots. In 2008, Daniel, Sr., filed a request for an exception for modification of a preexisting nonconforming use, seeking approval for the construction of three new buildings, the installation of a scale, and the relocation of driving areas on his lots. The BZA also approved these modifications.

Two years later, in January 2010, Gary filed a request for an exception to expand the salvage yard as a nonconforming use. The BZA held a hearing on the request on February 9, 2010. Gary submitted site plans of his proposed changes, which included the removal of several mobile homes along the highway, the relocation of the Buffer Mound, the installation of a new location sign, and the construction of three new buildings to move the operations indoors to control the noise and dust. Remonstrators who expressed

4

their concern that the changes would create a safety hazard due to water pollution were assured that the State Board of Health and Department of Environmental Management monitor these hazards, and that Gary had no prior violations. Following the hearing, the BZA voted unanimously to approve the modification of the preexisting nonconforming use.

In March 2010, the Stuckmans filed a Verified Petition for Writ of Certiorari, seeking judicial review of the BZA's decision. In the Writ, the Stuckmans alleged that their businesses would be damaged and prejudiced by the BZA's decision. The trial court issued its Writ of Certiorari in May 2010. Gary died during the pendency of the proceedings, and his estate was substituted as a party in March 2011.

The trial court held a hearing on the case in July 2011. The Stuckmans argued that the BZA did not apply the appropriate zoning ordinance to the facts of the case. Specifically, Zoning Ordinance Section 5.5 gives the BZA the power to authorize changes of lawful nonconforming uses and/or structures. Here, however, the BZA members reviewed a checklist from Section 5.4 of the zoning ordinance, which applies to exceptions. The Stuckmans asked the trial court to either reverse the BZA's decision or to remand the case to the BZA for a hearing with new evidence and a decision based upon proper sections of the zoning ordinance.

The Appellees, however, pointed out that the BZA had the Appellees' written request to consider the case as a request for a nonconforming use, and subsequently held a hearing concerning the modification of a nonconforming use and discussed the factors listed in Section 5.5 of the Zoning Ordinance. Therefore, according to the Appellees, the

BZA knew it was deciding the issue of changes to a nonconforming use. The Appellees argued that the proper procedure would be to remand the case to the BZA for the limited purpose of issuing findings of fact that reflected the evidence at the hearing.

In September 2011, the trial court issued "Findings, Conclusions and Judgment Remanding for the Limited Purpose of Revised Findings of Fact," wherein the court concluded that Daniel Jr. lacked standing to contest the BZA's decision because he was not an abutting or adjacent property owner, he presented no evidence at the hearing to indicate any effect whatsoever on his property, and he pointed to no evidence in the record of proceedings indicating an adverse effect on his property. The trial court also concluded that the BZA's decision required additional findings of fact to be prepared by the BZA. The trial court remanded the case to the BZA for the limited purpose of issuing findings of fact sufficient to describe and support its February 2010 decision and for the return of those findings to the trial court for additional supplemental review.

In December 2011, the BZA issued Findings of Fact on remand concluding that the modification of the lawful, preexisting, nonconforming use in this case complied with the Agreement and Section 5.5 of the Zoning Ordinance. The BZA concluded in part that there was simply no evidence presented which indicated that the proposed changes of use or modifications of structures would cause hardship to the neighborhood properties, an adverse effect on the character of the neighborhood, or a hazard to adjoining structures or properties. Specifically, the BZA noted that the removal of several mobile homes along with a new location for the buffer mound would constitute a significant improvement to the neighborhood and be of benefit to Gary's adjoining neighbors. The BZA also noted

6

that on its face, a garbage or recycling business would not be harmed by Gary's proposed changes to his auto salvage business. The BZA therefore approved Gary's application for modification and change to a lawful nonconforming use and lawful nonconforming structures.

The trial court concluded that the BZA's findings of fact conformed with and were supported by the evidence and were sufficient to support the BZA's decision. The trial court therefore ratified and confirmed the BZA's findings and conclusions. The Stuckmans appeal.

## I. Standing

As a preliminary matter, the Stuckmans argue that the trial court erred in concluding that Daniel Jr. lacked standing to petition for certiorari. The question of whether a party has standing is purely one of law and does not require deference to the trial court's determination. Common Council of Michigan City v. Board of Zoning Appeals of Michigan City, 881 N.E.2d 1012, 1014 (Ind. Ct. App. 2008).

Pursuant to the law in effect at the time this proceeding commenced, the Stuckmans properly challenged the BZA's decision by filing a Verified Petition for Writ of Certiorari pursuant to Indiana Code section 36-7-4-1003.[1] According to this statute, only a person aggrieved by a BZA decision may petition the county circuit or superior court for certiorari. An aggrieved person is one who has suffered a substantial grievance, a denial of some personal or property right, or the imposition of a burden or obligation.

---

[1] Indiana Code section 36-7-4-1600, effective July 2011, establishes an exclusive means for judicial review of zoning decisions made by a board of zoning appeals.

7

Benton County Remonstrators v. Board of Zoning Appeals of Benton County, 905 N.E.2d 1090, 1098 (Ind. Ct. App. 2009). Generally, the BZA's decision must infringe upon a legal right of the petitioner that will be enlarged or diminished by the result of the appeal, and the petitioner's resulting injury must be pecuniary in nature. Bagnall v. Town of Beverly Shores, 726 N.E.2d 782, 786 (Ind. 2000). The petitioner must show some special injury other than that sustained by the community as a whole. Benton County, 905 N.E.2d at 1098.

Bagnall is instructive. There, three fifty-foot lots separated the real estate that was granted a variance by the BZA and the property owned by the Bagnalls. The Indiana Supreme Court concluded that, even as owners of nearby real estate, the Bagnalls did not demonstrate that they had standing because they presented nothing in their petition nor did they enter any evidence in the record to suggest that the variance would result in an infringement of a legal right resulting in a pecuniary injury. 726 N.E.2d at 782.

Here, as in Bagnall, Daniel Jr. failed to demonstrate that he had standing because he does not own property abutting Gary's property, he presented no evidence at the hearing to indicate any effect whatsoever on his own property, and he pointed to no evidence in the record of proceedings indicating an adverse effect on his property. The trial court did not err in concluding that Daniel Jr. did not have standing to challenge the BZA's decision.

## II. Substantial Evidence

Next, we address the Stuckmans's argument that the BZA applied the wrong section of the Ordinance to the facts of the case. Specifically, the Stuckmans believe that

they are entitled to a new hearing because during the February 2010 hearing, BZA board members reviewed a checklist for Section 5.4 of the Ordinance, which applies to exceptions, rather than reviewing Section 5.5 of the Ordinance, which applies to nonconforming uses. However, this error was remedied when the trial court remanded the case to the BZA for findings consistent with Section 5.5. The BZA issued additional findings in December 2011 and concluded that the modification of the lawful preexisting nonconforming use complied with the Agreement and Section 5.5 of the Ordinance.

The Stuckmans also argue that the trial court erred in ratifying and approving the remanded findings. Specifically, the Stuckmans argue that these findings included evidence that was not before the BZA at the February 2010 hearing. First, where a board of zoning appeals fails to make findings, the proper action of the trial court is to remand to the BZA for the entry of findings. Habig v. Harker, 447 N.E.2d 1114, 1117 (Ind. Ct. App. 1983). Further, the adoption of administrative findings need not be made at the same meeting at which the evidence is heard. McBride v. Board of Zoning Appeals of the Evansville-Vanderburgh Area Plan Commission, 579 N.E.2d 1312, 1316 (Ind. Ct. App. 1991). Therefore, the trial court was within its discretion to remand the case to the BZA for further findings consistent with the proper section of the Ordinance. Further, the gravamen of the Stuckmans' argument is that there is not substantial evidence to support the BZA's decision on remand, which is another way of arguing that BZA erred in granting Gary's request for an exception to modify his nonconforming use.

When reviewing a decision of a zoning board, this Court and the trial court are bound by the same standard. Midwest Minerals, Inc. v. Board of Zoning Appeals, 880

9

N.E.2d 1264, 1268 (Ind. Ct. App. 2008), trans. denied. We presume the determination of the board, an administrative agency with expertise in zoning matters, is correct. Id. We will reverse only if the board's decision is arbitrary, capricious, or an abuse of discretion. Id. We will not reweigh the evidence or substitute our decision for that of the board. Thus, the Stuckmans labor under a heavy burden in urging this court to overturn the BZA's decision. See id.

The Ordinance section 5.5, which concerns nonconforming uses provides as follows:

> The Board of Zoning Appeals shall have the power to authorize changes of lawful non-conforming uses and/or non-conforming structures as follows:
>
> 5.5.1 A non-conforming use which occupies a portion of a structure or premises may be extended within such structure or premises as they exist when the prohibitory provision took effect, but not in violation of the area and yard requirements of the district in which such structure or premises are located;
> 5.5.2 The Board of Zoning Appeals may authorize a change of use of a non-conforming use or structure if the Board determines that the proposed new use would not cause hardships to the neighborhood properties or have an adverse effect on the character of the neighborhood; and is of greater restriction than the existing non-conforming use;
> 5.5.3 The Board of Zoning Appeals may authorize a change or expansion of a non-conforming structure if the Board determines that the proposed change or expansion will not cause hardship to the neighboring properties, will not have [a]n adverse effect on the character of the neighborhood, and will not pose a safety hazard to adjoining structures or properties.
> 5.5.4 The Board of Zoning Appeals may impose any conditions and safeguards it deems necessary for the protection of adjacent property and the public interest.

Appellant's App. p. 232.

The evidence presented at the hearing established that Gary proposed to remove several mobile homes along the highway, relocate the Buffer Mound, install a new

location sign, and construct three new buildings to move the operations indoors to control the noise and dust. The sole concern raised by remonstrators was a safety hazard due to water pollution, a concern that would be monitored by the Department of Health and IDEM.

In its remand order, the BZA explained that although it had inadvertently used a checklist for an exception at the December 2010 hearing, Gary's petition was clearly to modify and change a preexisting nonconforming use and at no time were board members confused as to the request nor did they believe that the purpose of the hearing was for an exception under Section 5.4 of the Ordinance. The BZA further found and concluded that pursuant to Section 5.5 of the Ordinance, there was simply no evidence presented, which indicated that the proposed changes of use or modifications of structures would cause hardship to the neighborhood properties, an adverse effect on the character of the neighborhood, or a hazard to adjoining structures or properties. Specifically, the BZA noted that the removal of several mobile homes which had been previously been considered a detriment to the neighborhood along with a new location for the buffer mound, would give a more pleasant appearance to this section of the roadway and would constitute a significant improvement to the neighborhood and be of benefit to Gary's adjoining neighbors. The BZA also noted that on its face, a garbage or recycling business would not be harmed by Gary's proposed changes to his auto salvage business. These findings are supported by substantial evidence.

11

## Conclusion

The trial court did not err in its finding that Daniel Jr., did not have standing to contest the BZA's decision. Based upon the evidence presented at the hearing, the BZA's decision was not arbitrary, capricious, or an abuse of discretion. The BZA did not err in granting Gary's request for an exception to modify and change his existing nonconforming use.[2]

Affirmed.

VAIDIK, J., and BARNES, J., concur.

---

[2] The Stuckmans also argue that the BZA decision violated the Agreement. However, they have failed to set forth any applicable standard of review or cite any legal authority in support of this argument. They have also failed to make any cogent legal argument or identify specific provisions of the Agreement that were violated. The Stuckmans have therefore waived appellate review of this issue. See York v. Fredrick, 947 N.E.2d 969, 979 (Ind. Ct. App. 2011) (stating that a party waives an issue where the party fails to develop cogent argument or provide adequate citation to authority and portions of the record), trans. denied. Waiver notwithstanding, we cannot conclude that any provision of the Agreement was violated.

Lastly, Daniel Sr., argues that the trial court erred in concluding that he was equitably estopped from challenging the BZA's decision because he had previously sought a similar expansion of the nonconforming use on his property, including the construction of three new buildings and an expanded staging area. However, because the BZA's decision is neither arbitrary, capricious, nor an abuse of discretion, we need not address the estoppel issue.