## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 16 2015, 8:37 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| ATTORNEY FOR APPELLANT, C.H. | ATTORNEYS FOR APPELLEE |
| Mark A. Delgado<br>Monticello, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| ATTORNEY FOR APPELLANT, M.H. | |
| Steven Knecht<br>Vonderheide & Knecht, PC<br>Lafayette, Indiana | Robert J Henke<br>James D. Boyer<br>Deputies Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of S.H. (child) and M.H. (father) and C.H. (mother);

M.H. (father), and
C.H. (mother),

*Appellants-Respondents,*

   v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 16, 2015

Court of Appeals Case No.
08A02-1505-JT-298

Appeal from the Carroll Superior Court

The Honorable Kurtis G. Fouts, Judge

Trial Court Cause No.
08D01-1408-JT-3

**May, Judge.**

[1] M.H. (Father) and C.H. (Mother) (collectively Parents) appeal the involuntary termination of their parental rights to S.H. (Child). Parents argue the Department of Child Services (DCS) did not present sufficient evidence the conditions under which Child was removed from their care would not be remedied and termination was not in the best interest of Child. In addition, Mother asserts the trial court erred when it did not dismiss the termination proceedings because P.H. (Paternal Grandmother) did not receive notice of the hearing. We affirm.

## Facts and Procedural History

[2] Child was born to Mother on November 11, 2012. At birth, Mother and Child tested positive for amphetamines for which Mother could not produce a valid prescription. Mother and Father were married at the time of Child's birth. DCS substantiated neglect and referred Parents to "intensive home based" services, (February 17, 2015 Tr.[1] at 57), which they did not successfully complete.

[3] On March 3, 2013, Lafayette police investigated a shoplifting complaint involving Father. While Father had not shoplifted, the police discovered him in

---

[1] Each hearing has a separately-numbered transcript, so we will refer to the transcript based on the date of the hearing. We remind the court reporter of Indiana Appellate Rule 28(A)(2), which requires all volumes of a transcript to be consecutively numbered.

a state that rendered him unable to drive because of suspected untreated renal failure. Police drove Father to the hotel where he, Mother, and Child were staying and discovered in plain view an array of prescription pills and alcohol in the room with the four-month-old Child. Mother was not forthcoming with her identity, and when police confirmed her name, she was arrested on an outstanding warrant. Child was removed by DCS because Mother was arrested and Father was unable to care for Child due to his medical condition.

[4]     On March 5, 2013, DCS alleged Child was a Child in Need of Services (CHINS). On May 29, 2013, after a hearing, the trial court adjudicated Child a CHINS because Mother was arrested while on probation and remained incarcerated at the time of the CHINS hearing, Mother had an alcohol abuse problem, and Father had acute kidney failure for which he did not seek treatment, rendering him unable to care for Child. In its June 24 dispositional order and parental participation orders, the trial court ordered Parents to, among other things: keep all appointments with DCS staff and service providers; maintain appropriate and consistent housing and income; abstain from using illegal substances and take prescription medication as directed; not use alcohol; visit Child as scheduled; and participate and complete services such as intensive family preservation program, parenting assessment and recommendations, substance abuse assessment and recommendations, random drug screens, and psychological evaluation and recommendations. Father was also ordered to participate in a medical evaluation and follow all

recommendations, and Mother was ordered to follow the terms of her probation.

[5] The trial court ordered Child placed with Mi.H. and P.H. (collectively Paternal Grandparents). That placement was briefly changed to foster care on October 17, 2013, after DCS learned Parental Grandparents allowed Parents to visit with Child unsupervised in violation of the safety plan. Child returned to Paternal Grandparents' care on October 30, but was again removed in December after Mi.H.'s death. Placement into foster care was necessary at that time because Parents and DCS had concerns regarding Paternal Grandmother's ability to care for Child alone.

[6] On December 6, 2013, the trial court found Parents in contempt of the disposition and parental participation orders because Parents were not participating in services and failed several drug screens. Mother was sentenced to 120 days and Father was sentenced to 30 days incarceration. On January 13, 2014, the trial court a second time found Father in contempt because Father failed multiple drug screens. Father was sentenced to an additional 120 days. On May 22, 2014, Mother and Father were again found in contempt for failing multiple drug screens and sentenced to 60 days each.

[7] On August 29, 2014, DCS filed a petition to involuntarily terminate Parents' parental rights to Child. The trial court held fact finding hearings on November 24, 2014, February 17, 2015, and February 24, 2015. At the beginning of the February 17 hearing, Parents' respective counsels orally moved to dismiss the

termination proceedings because they claimed Paternal Grandmother had not received notice of the hearing. The trial court denied the motion. On April 13, 2015, the trial court issued an order involuntarily terminating Parents' rights to Child.

## Discussion and Decision

### *Motion to Dismiss*

[8] During the second fact-finding hearing on February 17, 2015, Parents' collective counsels orally moved to dismiss the termination proceedings because Paternal Grandmother was not given notice of the hearing. Ind. Code § 31-35-2-6.5(f) requires the court to provide "any other suitable relative or person who the department knows has had a significant or caretaking relationship to the child," Ind. Code § 31-35-2-6.5(c)(5), "an opportunity to be heard and make recommendations to the court at the hearing." Ind. Code § 31-35-2-6.5(f). The trial court denied the motions, finding Paternal Grandmother to be a relative not suitable to care for Child due to Paternal Grandmother's inability to drive and numerous health problems and thus not entitled to notice of the hearing under Ind. Code § 31-35-2-6.5(c)(5).

[9] Mother argues:

> Paternal Grandmother was never provided notice of the parental rights termination hearing, violating a substantial due process right. As a result, [P]aternal [G]randmother was unable to assert any right to guardianship or custody of [Child], which would permit her to remain within [Mother's] extended family.

(Br. of Appellant Mother at 10). However, as the State points out, Mother does not have standing to assert Paternal Grandmother's rights. In order to establish standing, Mother must demonstrate she "sustained or was in immediate danger of sustaining some direct injury as a result of the conduct at issue." *State ex rel Steinke v. Coriden*, 831 N.E.2d 751, 754 (Ind. Ct. App. 2005), *trans. denied*. Mother has not done so.[2]

### Sufficiency of the Evidence

[10] We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[11] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first

---

[2] In addition, the "rights" Mother attempts to assert on behalf of Paternal Grandmother, those of the ability to gain guardianship or custody of Child, are not part of the proceedings in front of the termination court. *See* Ind. Code § 29-3-5-1 (guardianship proceedings) and Ind. Code § 31-17-2-3 (custody proceedings by someone other than a parent).

whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[12]     "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

[13]     To terminate a parent-child relationship, the State must allege and prove:

> (A) that one (1) of the following is true:
>
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

*Remedy of Conditions Resulting in Child's Removal*

[14] Parents argue DCS did not present sufficient evidence to prove the conditions which resulted in Child's removal would not be remedied.[3] The trial court must judge a parent's fitness to care for his child at the time of the termination hearing. *In re A.B.,* 924 N.E.2d 666, 670 (Ind. Ct. App. 2010).

[15] Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke County OFC,* 861 N.E.2d 366, 372 (Ind. Ct. App. 2007). Mother likens her situation to that of the parents in *In re J.M.*, in which our Indiana Supreme Court upheld the denial of DCS's petition to terminate parents' rights to their child despite the fact the parents were incarcerated. 905 N.E.2d 191, 194-96 (Ind. 2009). Mother's reliance on *In re J.M.* is misplaced, as the parents in that case had completed all required services and had a stable plan for life post-incarceration. In contrast, Mother was repeatedly arrested during the proceedings and did not complete services.

[16] DCS removed Child from Parents' care because Mother was incarcerated and Father had physical ailments rendering him unable to care for Child. Throughout the CHINS and TPR proceedings, Parents tested positive for illegal

---

[3] DCS does not have to prove both a reasonable probability the conditions that resulted in Child's removal will not be remedied *and* the continuation of the parent-child relationship between Mother and Child posed a threat to the well-being of Child. The statute is written in the disjunctive, and DCS must prove either by clear and convincing evidence. *See* Ind. Code § 31-35-2-4. Because there was a reasonable probability conditions leading to Child's removal would not be remedied, we need not address whether the continuation of the parent-child relationship posed a threat to Child's well-being.

substances multiple times. Mother attended an inpatient substance abuse program, but was kicked out when she drank alcohol while on a weekend pass. Father claims he takes his prescribed medication as directed, but drug screens have indicated varying levels of the substance in his body, which suggests he did not comply with the court's order. Mother habitually did not show up for appointments with service providers. Father repeatedly denied having a substance abuse problem, despite testing positive for illegal substances.[4] In light of their continuing problems, we see no error in the court's determination that the circumstances leading to removal would not change. Parents' arguments to the contrary are merely invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court does not reweigh evidence).

*Best Interests of Child*

[17] Parents argue DCS did not prove termination of Parents' rights was in the best interests of Child, as required by Ind. Code § 31-35-2-4(c). In determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the juvenile court must subordinate the interests of the

---

[4] Father contends the trial court's findings regarding his continued substance abuse and propensity towards the same behavior in the future are not supported by the evidence. His contention is an invitation for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence).

parent to those of the child. *Id.* Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

[18] Mother analogizes the facts of this case to those in *In re G.Y.*, in which our Indiana Supreme Court held termination of parental rights was not in the child's best interests because mother's incarceration had not resulted from a crime committed during the child's lifetime, mother had completed all services, and mother had a good relationship with the child. 904 N.E.2d 1257, 1263-64 (Ind. 2009), *reh'g denied*. Mother's reliance on *In re G.Y.* is misplaced because she was arrested multiple times after Child's birth, did not complete required services, and never progressed beyond supervised visits with Child.

[19] Child spent only the first four months of her life with Parents. Since December 2013, Child has been in foster care with a family who is interested in adopting her. Parents have repeatedly violated the trial court's orders, resulting in contempt findings and related incarcerations. They have abused drugs and have not completed services. Mother's visitation with Child was inconsistent due to incarceration, and Father was reported to have shown aggression toward Child during a visit when he became frustrated with Child's behavior. Child's Guardian *ad Litem* testified she felt Parents' behavior "shows that there is a substantial probability of future neglect of [Child] or deprivation of [Child's]

needs." (February 17, 2015 Tr. at 189.) That evidence supports the court's conclusion, and Parents' arguments to the contrary are invitations for us to reweigh the evidence, which we cannot accept. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence).

## Conclusion

[20] Mother did not have standing to assert any rights available to Paternal Grandmother. Additionally, there was sufficient evidence the conditions under which Child was removed from Parents' care would not be remedied and termination was in Child's best interests. Therefore, involuntary termination of Parents' rights to Child was appropriate. We accordingly affirm the decision of the trial court.

[21] Affirmed.

Najam, J., and Riley, J., concur.