# FOR PUBLICATION



**FILED**

Nov 27 2013, 5:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUSAN E. CLINE**
Lewis Wagner, LLP
Indianapolis, Indiana


Attorney for *Amicus Curae,* ITLA
**ROBERT W. JOHNSON**
Johnson Jensen LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GEORGE C. GRAY**
**DANIEL L. ROBINSON**
Gray Robinson Ryan & Fox
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

INDIANA PATIENT'S COMPENSATION FUND, ) 
) 
)
Appellant-Respondent, )
)
vs. ) No. 49A05-1207-CC-340
)
JUDY HOLCOMB, Personal Representative of the )
Estate of MABLE LOUIS COCHRAN, Deceased, )
)
Appellee-Petitioner )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
Cause No. 49D06-1108-CC-32645

**November 27, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

The Indiana Patient's Compensation Fund ("the Fund") appeals an order in this adult wrongful death action awarding Judy Holcomb, as personal representative of the estate of Mable Louise Cochran ("the Estate"), $50,440.00 in attorney fees to be paid by the Fund. The Fund argues on appeal the amount of fees exceeds that permitted by Ind. Code § 34-18-18-1, which provides: "When a plaintiff is represented by an attorney in the prosecution of the plaintiff's claim, the plaintiff's attorney's fees from any award made from the patient's compensation fund may not exceed fifteen percent (15%) of any recovery from the fund."

As attorney fees are recoverable as pecuniary damages in an adult wrongful death action, we cannot adopt the Fund's position that the total amount of attorney fees recoverable may be only 15% of what is taken from the Fund, without regard to whether or to what extent that amount includes attorney fees on the amount recovered before the Fund is reached. Instead, the 15% limitation applies only to new monies from the fund, not monies that otherwise might be characterized as attorney fees on the amount recovered before the Fund is reached, but that is included as damages when applied to the Fund. In other words, the 15% limitation does not apply to the assessment of damages caused by the tortfeasor or the calculation of excess damages of any type from the Fund.

However, as explained below, the trial court's award in the case before us does not accurately reflect either the proper amount of attorney fees or the proper allocation of money awarded from the fund. We must therefore reverse and remand.

2

## FACTS AND PROCEDURAL HISTORY[1]

Mable Cochran died in January 2011, and Holcomb, as personal representative, opened the Estate to pursue a wrongful death claim against the Chase Center Nursing Home. She brought the action under the Adult Wrongful Death Statute ("AWDS"), Ind. Code § 34-23-1-2, which provides for an action for the wrongful death of an unmarried adult without dependents. The AWDS permits the decedent's estate to recover medical and funeral expenses and allows the decedent's nondependent parents or children to recover damages for loss of love and companionship. *McCabe v. Comm'r, Indiana Dep't of Ins*., 949 N.E.2d 816, 818 (Ind. 2011). Holcomb hired Gray Robinson Ryan and Fox ("Gray Robinson") to represent the Estate.

The original agreement with Gray Robinson provided the Estate would pay Gray Robinson the following:

> A sum of money equal to Forty Percent (40%) received or recovered upon this claim, whether by way of settlement or by judgment.
>
> In the event the health care provider is qualified under the [Medical Malpractice Act], then the fee shall be a sum of money equal to Fifteen Percent (15%) received or recovered upon this claim, whether by way of settlement or by judgment paid from [the Fund]. The percentage of attorney's fees on the first Two Hundred and Fifty Thousand Dollars ($250,000) received on behalf of any defendant shall be adjusted to whatever Percent is necessary, so that the total attorney's fees for all amounts recovered by way of settlement or judgment shall be as much as, but not to exceed 40%.

(App. at 6.)

---

[1] We heard oral argument May 24, 2013. We commend counsel on the quality of their advocacy.

3

The nursing home settled the Estate's claim for the $250,000 limit of its liability,[2] and the Estate was then entitled to seek excess damages from the Fund pursuant to Ind. Code § 34-18-15-3. The trial court approved the settlement, from which $74,800.40 was to be paid in attorney fees.

The Estate then petitioned for a determination of the amount of excess damages due from the Fund, which damages it characterized as "including compensation for loss of love and companionship for the decedent's adult children, last medical, funeral and burial expenses, and costs of administration, including expenses of litigation and attorneys' fees." (App. at 14.) The Estate and the Fund reached a settlement agreement on December 28, 2011, that provided the parties were settling "their dispute regarding [the Estate's] wrongful death damages, *except for attorney's fees*[.]" (*Id.* at 21) (emphasis added).

Pursuant to the agreement the Fund would pay the Estate $101,166.89. The settlement characterized the Estate's damages as follows:

| | |
|---|---|
| Loss of Love and Companionship | $300,000.00 |
| Funeral/Burial Expenses | 3,900.00 |
| Medical Expenses | 45,759.44 |
| Litigation Expenses | 1,507.45 |
| TOTAL DAMAGES: | $351,166.89 |
| Amount paid by underlying provider | (250,000.00) |
| Amount paid by [the Fund] | $101,166.89. |

(App. at 36.)

---

[2] Ind. Code § 34-18-14-3(b) provides: "A health care provider qualified under this article . . . is not liable for an amount in excess of two hundred fifty thousand dollars ($250,000) for an occurrence of malpractice."

4

The trial court scheduled a hearing on the remaining issue of attorney fees, and Gray Robinson filed an affidavit that averred it had expended 126.1 hours on the case through January 30, 2012 and that additional hours were being expended in preparation for the hearing. Counsel opined that a reasonable hourly[3] rate was $400.00.

At the hearing, the Estate noted attorney fees are now recoverable as wrongful death damages and argued:

> So all those damages [including attorney fees] go into the pot of liability of the . . . health care provider, for the excess damages against the Fund of $250,000-dollars, underlying limit is subtracted. And since the Fund has paid all of the other damages in this case that leaves the $50,440[4] as additional excess damages. Under this statute that the Fund is relying on the [Estate's] attorney would be entitled to charge up to 15 per cent of that as an additional fee.
>
> * * * * *
>
> [T]he statute 34-18-18-1 just addresses what an attorney can charge a client for a recovery from the Fund[;] it in no way addresses the underlying damages caused by the tort feasor [sic].

(Tr. at 10-11.)

The Fund did not dispute the agreed-upon underlying amount of damages as stated in the settlement, which amount did not include attorney fees; nor did it challenge the reasonableness of the $50,400 in attorney fees Gray Robinson was claiming. But it argued:

---

[3] For reasons not apparent from the record, in its argument before the trial court for attorney fees, the Estate's counsel premised its request not on the original contingency fee agreement but instead on an hourly fee basis.

[4] That amount appears to reflect the amount referred to in the Gray Robinson affidavit -- 126.1 hours multiplied by Gray Robinson's hourly rate of $400.

> Rules of statutory construction do not support payment of the entire award of attorney fees from the [Fund]. . . . [Ind. Code § 34-18-18-1] places . . . a strict restriction on the amount that can be recovered for an act of mal practice [sic] in the state of Indiana. So the fact that the legislator [sic] chose to include another strick [sic] restriction on the amount of fees that can be recovered by Plaintiff's counsel is not unusual, nor is it inconsistent with the rest of the intent of [the Medical Malpractice Act]. The meaning of [Ind. Code § 34-18-18-1] is plain and unambiguous and . . . means exactly what it says. It means that of the amount paid from [the Fund] only 15 percent of it can be fees.

(*Id*. at 21-23.) The $50,400 Gray Robinson was claiming, the Fund argued, violated the statute because it was a "request that [the Fund] pay an amount that is 33 per cent attorney fees." (*Id*. at 19.) The Fund urged the trial court to award only $17,852.98 as attorney fees. It reached that figure by dividing $101,166.89, the amount the parties agreed would be the Fund's liability without attorney fees, by .85, then multiplying that amount by fifteen percent.

The trial court awarded $50,440.00, the amount Gray Robinson characterized as "additional excess damages," (*id*. at 11), in attorney fees. In its findings and conclusions it found:

> $101,166.89 in excess compensation was previously paid by the Fund. Pursuant to this agreement, the parties compromised and settled their "dispute regarding [the Estate's] wrongful death damages, except for attorney's fees[.]"
>
> \* \* \* \* \*
>
> [The Estate] requests an assessment of $50,400.00 in reasonable attorney's fees as a wrongful death pecuniary damage caused by the underlying tortfeasor payable by the Fund as additional excess compensation.

(App. at 46.)

6

In its conclusions the court quoted our Indiana Supreme Court: "[A]ttorney fees, probate administration costs, and litigation costs are compensatory damages that remedy actual pecuniary losses. Therefore, we find no compelling reason why these damages should not be allowed." (*Id*. at 47) (quoting *Indiana Patient's Comp. Fund v. Brown*, 949 N.E.2d 822, 824 (Ind. 2011)). The trial court concluded attorney fees are pecuniary losses caused by a tortfeasor that should be compensated just like other items of damages. It noted Ind. Code § 34-18-18-1 "does not limit the amount of pecuniary damages caused by the tortfeasor, including attorney fees, for purposes of determining excess damages payable by the Fund." (*Id*. at 47-48.) It therefore concluded the amount Gray Robinson claimed, $50,400, was "properly assessable as wrongful death damages . . . payable as excess compensation by the fund." (*Id*. at 48.)

## DISCUSSION AND DECISION

The trial court was correct that the Estate's attorney fees were properly assessable as wrongful death damages payable as excess compensation by the Fund and were not limited to 15% of the $101,166.89 the parties agreed would be the Fund's liability without attorney fees. But neither the $17,852.98 suggested by the Fund nor the $50,440.00 amount premised on Gray Robinson's hourly rate appears to fairly or accurately reflect either the full amount of attorney fees the Estate paid or an amount properly recoverable from the Fund in light of the statutory limitation. We must therefore remand for a recalculation of the fee amount.

7

This case presents a prime example of what happens when statutes collide - the result is potentially prejudicial to both sides and likely unacceptable to both. The journey leading to this collision began in 1998, when the legislature added Ind. Code § 34-18-18-1 to the Medical Malpractice Act. That statute addresses "plaintiff's attorney's fees from any award made from the patient's compensation fund" and imposes the 15% limitation at issue in the case before us. The statute does not address whether there is a limit on the amount of attorney fees in the form of damages that may be recovered from any settlement or award that made it possible to reach the Fund.[5]

Then, in 1999, our legislature promulgated the Adult Wrongful Death Statute (AWDS), under which the Estate brought this action. In 2011, our Indiana Supreme Court held attorney fees may be included as damages under the AWDS. *See Hematology-Oncology of Indiana, P.C. v. Fruits*, 950 N.E.2d 294 (Ind. 2011); *McCabe*, 949 N.E.2d at 621.

It seems apparent the legislature, when it imposed the 15% limitation under the Medical Malpractice Act in 1998, did not contemplate the situation now before us – that years later, attorney fees would be recognized as adult wrongful death damages or that a plaintiff's counsel would, as the Estate's counsel does here, present a claim for attorney

---

[5] The Medical Malpractice Act limits the liability of a qualified health care provider whose medical negligence proximately caused death to $250,000. Ind. Code § 34-18-14-3(b). If a judgment or settlement fixes damages in excess of a qualified health care provider's liability, then a plaintiff may recover excess damages from the Fund. Ind. Code § 34-18-14-3(c). The total amount recoverable for an act of malpractice occurring after June 30, 1999, and resulting in injury or death of a patient may not exceed $1,250,000. Ind. Code § 34-18-14-3(a)(3). The malpractice for which the Estate recovered occurred after June 30, 1999.

fees both as a part of the damages and also as a separate amount recoverable from the Fund under Ind. Code § 34-18-18-1.

In *McCabe* and *Fruits*, our Indiana Supreme Court held reasonable attorney fees incurred in the prosecution of an action under the AWDS are within the damages permitted by the statute. Whether attorney fees were damages had been in doubt, because the general wrongful death statute, enacted in 1852,[6] had for some time been explicit that attorney fees were recoverable as damages. By contrast, the AWDS, promulgated in 1999 and effective January 1, 2000, did not explicitly include or exclude attorney fees as damages. Holcomb's action was brought in August 2011, under the AWDS, soon after *Fruits* and *McCabe* were decided.

In the case before us, the Fund and the statute limiting recovery of attorney fees from the Fund were implicated because the parties entered into a partial settlement that exceeded $250,000 and therefore gave rise to the Fund's obligation to pay. But that settlement explicitly *excluded* attorney fees from its calculation of damages. The settlement characterized Holcomb's damages as follows:

| | |
|---|---|
| Loss of Love and Companionship | $300,000.00 |
| Funeral/Burial Expenses | 3,900.00 |
| Medical Expenses | 45,759.44 |
| Litigation Expenses | 1,507.45 |
| TOTAL DAMAGES: | $351,166.89 |
| Amount paid by underlying provider | (250,000.00) |
| Amount paid by [the Fund] | $101,166.89. |

---

[6] The general wrongful death statute, enacted in 1852 and again in 1881, was amended in 1899, 1933, 1937, 1949, 1951, 1957, 1965, 1982, and 1998. *Durham ex rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755, 761 n.3 (Ind. 2001).

(App. at 36.) But the itemization in that settlement does not accurately reflect the original agreement between the Estate and its counsel, which was explicit that counsel would be paid 40% of any recovery. The original agreement between the Estate and counsel referred to a fee of 15% of the amount recovered from the Fund, then provided the percentage of attorney fees on the first $250,000 would "be adjusted to whatever Percent is necessary, so that the total attorney fees for all amounts recovered" would be 40%. (App. at 6.) Nor does the itemization reflect that from the settlement that recovered the first $250,000, counsel had already been paid $74,800.40.[7] (App. at 9.)

Once the $250,000 threshold amount was reached, negotiation with the Fund began. A partial settlement was reached, as expressed in the itemization above, that provided for a payment from the Fund of $101,166.89, with the question of attorney fees deferred for determination by the trial court.

For reasons not apparent from the record, in its argument before the trial court for attorney fees, the Estate's counsel premised its request not on the original contingency fee agreement but instead on an hourly fee basis. Counsel stated in an affidavit that the amount of attorney fees incurred up to that time was $50,440.00.[8] There was no request

---

[7] The $74,800.40 figure represents 40% of $187,001.00, the present value of a settlement that included a lump-sum payment and an annuity.

[8] We acknowledge the Fund's agreement this amount is reasonable. Still, the figure is puzzling, as the contingency fee agreement allowed a fee of 40%, and 40% had in fact been subtracted from the first part of the settlement. Although difficult to believe, one must wonder whether the claim for $50,440.00 is based on an hourly rate or whether, in light of the prior payment of $74,800.40, that claim reflects an acknowledgment the higher figure was not reasonable and amounts to an admission the fees were excessive.

for fees expended in the action to recover from the Fund, nor was there a disclosure of the amount of fees counsel was paid from the Fund settlement.

The Fund notes that, as reflected in the partial settlement, it was obliged to pay $101,166.89, not including attorney fees. It then takes the position that because Ind. Code § 34-18-18-1 says attorney fees cannot exceed 15% of any recovery from the Fund, the Estate's counsel could be awarded only $17,852.98. Paying Gray Robinson the $50,440.00 it asked for, the Fund argues, would make its award 33% of the Fund recovery, which the statute does not permit.

Neither amount appears to fairly or accurately reflect the attorney fees the Estate incurred in this adult wrongful death case. The $50,440.00 the trial court awarded seems not to reflect either the full amount of the attorney fees the Estate paid or an amount properly recoverable from the Fund in light of the statutory limitation. The $17,852.98 figure proposed by the Fund is not consistent with the reasoning in *Fruits*, *McCabe*, and *Brown* that attorney fees are compensatory damages that remedy actual pecuniary losses.

The record and statements at oral argument indicate the Estate paid attorney fees of $74,800.40. The Estate represented at oral argument that the additional $50,440.00, which the trial court designated as attorney fees to be included in the Fund recovery, would go back to the Estate and no additional fees would be taken from it. But under

these calculations, the Estate paid $74,800.40, yet it received reimbursement of only $50,440.00 for fees, suggesting the Estate paid $24,360.40 it did not recover.[9]

As explained above, it seems apparent the legislature did not, when it imposed the 15% attorney fee limitation, contemplate that attorney fees might subsequently be determined to be a form of damages.  But to the extent the intent of the statute is to limit the amount of attorney fees recoverable from the Fund to 15% of any recovery from the Fund, the trial court's result is inconsistent with that intent.  Under this calculation ($74,800.40 minus $50,440.00), which results in the outstanding fees of $24, 360.40 that remain unrecovered by the Estate, the 15% statutory limitation is exceeded, as $24,360.40 is more than 15% of the $101,166.89 recovery from the Fund.

Under the facts the parties have placed before us, including an agreement regarding the Fund's liability that purported to include no attorney fees as damages, it is impossible to reach a result that is fair to the Estate and to its counsel, yet consistent with the statutory 15% limitation.  As the trial court's award does not accurately reflect either the proper amount of attorney fees or proper allocation of money awarded from the Fund, we must reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

PYLE, J., concurs.

ROBB, C.J., dissents with separate opinion.

---

[9] The Estate's counsel advised the trial court "no additional attorney's fees would be claimed from the additional recovery of excess damages for attorney's fees."  (Br. of Appellee at 10 n.2.)

12

# IN THE
# COURT OF APPEALS OF INDIANA

INDIANA PATIENT'S )
COMPENSATION FUND, )
)
    Appellant-Respondent, )
)
       vs. )    No.  49A05-1207-CC-340
)
JUDY HOLCOMB, Personal Representative )
of the Estate of MABLE LOUISE )
COCHRAN, Deceased, )
)
    Appellee-Petitioner. )

**ROBB, Chief Judge, dissenting**

As I read the applicable statutes and case law, a reasonable attorney's fee as an element of damages in an AWDS case is unlimited by Indiana Code section 34-18-18-1 and the entire amount is includable in the damages calculation, from which the Fund's excess damages payment is to be determined. I also believe Section 34-18-18-1 does, however, limit the amount that may be paid to the attorney from that excess damages payment. Further, I believe the majority opinion overlooks the unique procedural posture of this case and is ultimately attempting to answer a question not being asked. I therefore

13

dissent and would hold the trial court's judgment assessing additional damages of $50,440.00 in attorney's fees to the Estate and against the Fund should be affirmed.

It is important to note at the outset that the trial court's order, and the issue appealed to this court, concerns the amount representing attorney's fees that is to be included in the damages calculation and from which the Fund's payment will be determined – a payment that will be made in total to the Estate – rather than the focus of the majority opinion, which is on the "fair amount" of attorney's fees the Estate has paid or will pay. The question of the amount that should be paid to the Estate's attorneys in fees will be determined at a later point by the probate court and is only peripherally involved in resolving the issue before us. Nonetheless, I do discuss that calculation because it is necessary for purposes of both explaining my position with regard to the issue properly before us and providing direction to the parties and the courts in further proceedings.

The Estate's claim alleges Cochran's wrongful death was caused by medical malpractice. The case therefore implicates provisions from both the AWDS and the Medical Malpractice Act. Specifically, the AWDS provides that damages:

    (2) may not include:
        (A) damages awarded for a person's grief; or
        (B) punitive damages; and
    (3) may include but are not limited to the following:
        (A) Reasonable medical, hospital, funeral, and burial expenses necessitated by the wrongful act or omission that caused the adult person's death.
        (B) Loss of the adult person's love and companionship.

14

Ind. Code § 34-23-1-2(c). The Medical Malpractice Act provides that "[w]hen a plaintiff is represented by an attorney in the prosecution of the plaintiff's claim, the plaintiff's attorney's fees from any award made from the patient's compensation fund may not exceed fifteen percent (15%) of any recovery from the fund." Ind. Code § 34-18-18-1.

In a trilogy of cases decided June 29, 2011, our supreme court held that the "may include but are not limited to" language in the AWDS – "a standard expression designating the permissive inclusion of an open-ended class of items not to be limited by designation of specific items that follow," McCabe, 949 N.E.2d at 820 – allows recovery of litigation expenses, Hematology-Oncology of Indiana, P.C. v. Fruits, 950 N.E.2d 294, 296 (Ind. 2011); expenses of administration and loss of services, Brown, 949 N.E.2d at 823; and, most relevant to this decision, attorney's fees, McCabe, 949 N.E.2d at 821. McCabe was a case brought in medical malpractice, but the court specifically did not consider the implication of its holding in relation to section 34-18-18-1, noting that the issue of whether attorney's fees and expenses could be recovered from the Fund was "not within the scope of the order certified for interlocutory appeal." Id. at 821 n.3.

It is in this context, with the contours of the interplay between the relevant statutes and the McCabe decision still unexplored, that the Estate brought this action in August 2011. All elements of the Estate's claim for damages were settled in short order but for the element of attorney's fees. As the majority notes, the statutes relevant to resolution of the attorney's fee issue "collide." Slip op. at 8. The fifteen percent limitation on the payment of attorney's fees out of the Fund appears in the Medical Malpractice Act, and

15

in a case that arises strictly under the Medical Malpractice Act – that is, in a case in which medical negligence does not result in death – attorney's fees are not an element of damages, and are therefore figured on and paid out of the recovery for all the other elements of damage. There is no such limitation in the AWDS, and in a case that arises strictly under the AWDS – that is, in an ordinary, non-medical negligence case – the amount of attorney's fees that can be assessed as an element of damages is not limited.[10] The conundrum in this case is how to fit a round peg into a square hole: in a case that arises under both the AWDS and the Act, how are attorney fees to be handled?

Several considerations factor into my resolution of this question. First, following the McCabe trilogy of cases in 2011, the legislature has not amended the AWDS with respect to what may or may not be recovered as damages. See Common Council of Mich. City v. Bd. of Zoning Appeals of Mich. City, 881 N.E.2d 1012, 1016 (Ind. Ct. App. 2008) (noting that legislative inaction following judicial interpretation of a statute, particularly by our supreme court, "may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation."). If the legislature did not intend attorney's fees to be within the damages permitted by the AWDS as interpreted by our supreme court, it could have amended the statute to so state. Moreover, if the legislature intended attorney's fees to be an element of damages under the AWDS but also intended for them to be limited, it would be simple to amend the statute to provide a cap. The majority opines it "seems apparent" the legislature did not contemplate that

---

[10] The amount of attorney's fees that can be charged and collected is, of course, limited by the Rules of Professional Conduct to a reasonable fee. See Ind. Professional Conduct Rule 1.5(a).

attorney's fees would someday be recognized as AWDS damages when it imposed the fifteen percent limitation in 1998, see slip op. at 8, but the legislature has not acted to mitigate the McCabe decision, and that is a relevant consideration in ascertaining legislative intent.

Second, the Act contains a chapter concerning "Limits on Damages," Ind. Code § 34-18-14-1 et seq., and a separate chapter concerning "Attorney Fees," Ind. Code § 34-18-18-1 et seq. The fifteen percent limitation, appearing in chapter 18 alongside a provision that the patient can elect to pay his or her attorney on a per diem basis, is relevant to the contract between the patient and attorney for how the attorney is paid. If it was intended to be a limit on the amount of damages that could be assessed, it would more suitably be found in chapter 14. Attorney's fees are not addressed in the "Limits on Damages" chapter, however, and again, this has not been amended since the McCabe cases.

Third, it is as important to note what a statute does not say as to note what it does say. See Boling v. State, 982 N.E.2d 1055, 1058 (Ind. Ct. App. 2013). In this case, Indiana Code section 34-18-18-1 does not say the attorney's fees themselves are capped at fifteen percent; it says the attorney's fees paid out of the Fund recovery are capped. Fourth, as the parties explained at oral argument, the probate court must approve the distribution of any payment from the Fund. See Ind. Code § 34-18-15-3.

And fifth, the procedural posture of this case has complicated the issue and must be recognized as unique to this case of first impression. The unfortunate consequence of

17

the parties reaching a partial settlement is that attorney's fees were set apart in this case in a way that will presumably not be true in future cases, and makes them appear to be something they are not. [11] In this regard, I note that although the Fund concedes it is "liable for attorney's fees" in this case, that is actually a misnomer. The Fund is liable to pay excess damages, of which attorney's fees may be an element. In future cases in which attorney's fees are included on the front end of the calculation rather than the back end, it will be more easily apparent that the Fund is simply contributing to the damages as a whole rather than seeming to contribute to any individual element of the damages.

I also note that the way in which the Estate has presented its attorney's fees has further complicated the issue, because the Estate's attorneys took $74,800.40 as a fee from the Estate's original settlement with the providers, which represented forty percent of the present value of that settlement in accordance with the fee agreement, but then presented to the trial court for purposes of determining the excess damages claim against the Fund an affidavit averring they had expended 126.1 hours at a rate of $400 per hour on this case, for a total fee of $50,400. Nonetheless, I do not think, as the majority states, that the Estate's counsel is presenting a claim for attorney's fees "both as a part of the damages and also as a separate amount recoverable from the Fund . . . ." Slip op. at 9; see also id. at 11 ("The record and statements at oral argument indicate the Estate paid

---

[11] Because the issue of attorney's fees has been specifically set aside, it appears at first blush as though the Fund would be paying the entirety of the fees. See Tr. at 19 (counsel for the Fund arguing to the trial court (as she did to this court at oral argument) that ordering the Fund to pay an additional $50,440.00 means that thirty three percent of the Fund's payment is attributable to attorney's fees). If attorney's fees are included as an element of damages in the overall damages calculation, however, it would be impossible to parse which entity is paying what amount of which element.

attorney fees of $74,800.40. The Estate represented at oral argument that the additional $50,440.00, which the trial court designated as attorney fees to be included in the Fund recovery, would go back to the Estate . . . .”). The $50,440 figure is not an additional attorney's fee; it is the attorney's fee for purposes of calculating damages. The Estate is simply presenting the attorney's fee damages claim separately from the remainder of the damages because of the parties' disagreement about how the fees were to be handled.

Taking these considerations into account, and giving effect to the relevant provisions of both the Medical Malpractice Act and the AWDS, I would hold that in cases subject to both the Medical Malpractice Act and the AWDS, attorney's fees as an element of damages are to be included in the overall calculation of damages at the outset pursuant to the provisions of the AWDS and are not limited by the fifteen percent limitation of the Medical Malpractice Act. The attorney's fee included as an element of damages is to be a reasonable fee, and I note that here, as in Fruits, that fee was determined by calculating the hours expended times an hourly rate. See Appellant's App. at 29 (affidavit showing 126.1 hours in attorney time at $400.00 per hour, for an attorney's fee of $50,440.00 as requested by the Estate); Fruits, 950 N.E.2d at 296 (stating attorney's verified petition for attorney's fees showed 355.3 hours at $250.00 per hour supporting a total attorney's fee of $88,825). The Fund's liability for excess damages is to be determined based upon that overall calculation of damages minus the provider payment. The majority, in stating that "the 15% limitation does not apply to the assessment of damages caused by the tortfeasor or the calculation of excess damages of

19

any type from the Fund," slip op. at 2, would seem to agree with this position. I would also hold the actual attorney's fee payable from the excess damages recovery from the Fund is limited by section 34-18-18-1 of the Medical Malpractice Act to fifteen percent of that excess payment. Again, if I understand the majority opinion's reference to "an amount properly recoverable from the Fund in light of the statutory limitation," id. at 11, the majority may be in accord. Finally, the total fee payable to the attorney is governed by the terms of the fee agreement between the attorney and client, subject to the above limitation.

Where I undoubtedly part ways from the majority is with regard to what this case ultimately asks us to decide and what that decision means in practice. The majority notes on two occasions that the partial settlement of $351,166.89 does not include attorney's fees. See slip op. at 9 (noting the partial settlement that gave rise to the Fund's obligation to pay excess damages "explicitly excluded attorney fees from its calculation of damages") (emphasis added); id. at 12 (noting the facts before us include "an agreement regarding the Fund's liability that purported to include no attorney fees as damages"). This seems to miss the very point that the partial settlement was partial specifically because the parties could not agree on how to handle the inclusion or exclusion of attorney's fees and agreed to set that issue aside for separate determination. See Br. of Appellant at 5-6 ("The [Fund] initially disputed whether it was responsible for the payment of attorney fees at all under the AWDS, or in the amount sought by the Estate; therefore, the [parties] agreed to partially resolve the claim by payment of those damages

20

expressly recoverable under the AWDS, and to leave open the issue of the recovery of attorney fees pending independent appellate review.").

The issue before us is simply and solely the total amount of the Fund's excess damages liability.  That is the issue the trial court addressed:

CONCLUSIONS OF LAW
* * *
2. . . . In a claim against the Fund for excess damages, pursuant to I.C. 34-18-15-3(5), when all of these recoverable damages [including attorney's fees] are added up, the amount over and above $250,000.00 is payable by the Fund as excess compensation.
3. . . . On its face, I.C. 34-18-18-1 does not limit the amount of pecuniary damages caused by the tortfeasor, including attorney's fees, for purposes of determining excess damages payable by the Fund.  It merely addresses the amount an attorney representing a claimant may charge a client from a recovery from the Fund, whether that amount represents excess damages comprised of loss of love and companionship, funeral and burial expenses, medical expenses, litigation expenses, and/or attorney's fees.  I.C. 34-18-18-1 does not state that for any amount awarded from the Fund, only 15% of that amount may represent attorney's fees . . . .
4.  Therefore, $50,440.00 is properly assessable as wrongful death damages caused by the tortfeasor over and above the underlying tortfeasor's liability limit, and is therefore payable as excess compensation by the Fund.
* * *
III.
JUDGMENT ENTRY
IT IS THEREFORE ORDERED, ADJUDGED & DECREED that an additional judgment shall be entered in favor of [the Estate] and against [the Fund], in the sum of Fifty Thousand Four Hundred and Forty Dollars ($50,440.00) . . . .

Appellant's App. at 47-48 (emphasis in original).  I agree with the trial court that the amount of the Fund's excess damages liability is the $101,166.89 already agreed to, representing loss of love and companionship, funeral and burial expenses, medical

21

expenses, and litigation expenses, plus $50,440.00, representing a reasonable attorney's fee, for a total excess damages liability of $151,606.89, payable to the Estate. I would therefore affirm the trial court's judgment assessing an additional $50,440.00 in reasonable attorney's fees as AWDS damages to the Estate, and the Fund would pay a total of $151,606.89 in excess damages to the Estate.

I also part ways with the majority as to its ultimate disposition of this case. As the trial court noted, there is a difference between the amount of attorney's fees included as an element of the claimant's damages, and therefore includable as an element of the excess damages payment, and the amount of attorney's fees the claimant pays to his or her attorney. We are concerned here only with the former. The latter will be addressed by the probate court when it approves the distribution of the excess damages payment. Accordingly, the trial court's order only assesses an additional excess compensation amount for damages representing attorney's fees in favor of the Estate and against the Fund, which in future cases will simply be included in the original, and presumably only, excess damages award. The trial court's order does not, nor should it, address the amount to be paid to the Estate's attorneys. I do not believe we should address that, either.

For purposes of further explaining my position on how the statutes interact with each other, however, I state again that when determining how much of the excess damages payment may be distributed to the Estate's attorneys, the probate court should take into account the Medical Malpractice Act's fifteen percent limitation. In other words, when the time comes to distribute the Fund payment – which is not now – the

probate court could not approve distribution of more than $22,741.03 of the Fund's payment to the Estate's attorneys ($151,606.89 x .15 = $22,741.03). Any fee balance remaining due to the attorneys pursuant to the fee agreement would have to be paid out of the earlier provider payment to the Estate.[12]

I neither understand what the majority purports to calculate at the conclusion of the opinion, nor do I believe the majority's disposition is consistent with its earlier statements or provides any guidance to the trial court on remand.

For the foregoing reasons, I dissent.

---

[12] The fee agreement between the Estate and Gray Robinson provides for a forty percent fee, which would be $160,642.76 on the recovery herein, and Gray Robinson has already been paid $74,800.40 out of the provider payment, both of which amounts are greater than the $50,440.00 in "reasonable attorney's fees" verified to the trial court. See also Fruits, 950 N.E.2d at 296-97 (petition for attorney's fees showed fee at an hourly rate of $88,825.00; "settlement recap" showed plaintiff agreed to $91,659.20, or forty percent of gross recovery pursuant to contingent fee agreement, being distributed as attorney's fees). Like the majority, see slip op. at 10 n.8, I am troubled by the disparity, but the actual attorney's fee due is not before us, and I would leave for another day the issue of whether it is proper for an attorney to collect more in fees pursuant to a contingent fee arrangement than is calculated to be a "reasonable attorney's fee" for purposes of assessing damages. Moreover, as the majority notes, the Estate's attorneys indicated at oral argument that they do not in fact intend to claim any additional attorney's fees over and above the $74,800.00 they have already been paid.

23